UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL JARVIS; JAMES JARVIS; ROBERT CRAMPTON; and COMMONWEALTH SECOND AMENDMENT, INC., | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| -against- | ) ) |
| VILLAGE VAULT, INC.; and SECRETARY MARY E. HEFFERNAN, in her Official Capacity as Secretary of the Executive Office of Public Safety and Security, | ) ) ) ) ) |
| Defendants. | ) ) ) |

## <u>COMPLAINT</u>

Plaintiffs RUSSELL JARVIS, JAMES JARVIS, ROBERT CRAMPTON, and COMMONWEALTH SECOND AMENDMENT, INC., by and through their undersigned counsel, as and for their Complaint against Defendants VILLAGE VAULT, INC.; and SECRETARY MARY E. HEFFERNAN, allege as follows:

1.     This action for deprivation of civil rights under 42 U.S.C. § 1983 concerns Chapter 140, § 129D of the Massachusetts General Laws.  Section 129D authorizes privately operated "bonded warehouses" to hold privately owned firearms and ammunition that police have taken into custody, and to then impose storage fees on the owners of those firearms and ammunition as a condition of obtaining their return or their transfer to a third party.  Individual owners have no control over whether their firearms are sent to a bonded warehouse, nor do they control which bonded warehouse the police select to perform storage services.  Section 129D

ultimately authorizes bonded warehouses to auction the firearms and ammunition, an act that conclusively deprives individual property owners of recognized property rights.

2.     This bonded warehouse arrangement violates the Due Process Clause of the Fourteenth Amendment because it allows for the imposition of impoundment fees, and the deprivation of protected "property" interests, without the provision of a meaningful opportunity to be heard.  Furthermore, this arrangement also violates the Due Process Clause because there are inadequate procedural protections to safeguard against the risk of erroneous deprivations. Specifically, the lack of any meaningful regulation of the rates and terms that bonded warehouses impose creates a substantial risk that fees will be excessive and prohibitive – particularly in light of the fact that individual gun owners have no opportunity or ability to negotiate fees and terms with bonded warehouses.  This creates an unacceptable risk that property owners will erroneously be deprived of their property when they are unable to pay the excessive and prohibitive fees.

3.     This lawsuit does not challenge the authority of police officers to initially take custody of privately held firearms when appropriately authorized by State law.  Rather, this lawsuit concerns the inadequate procedural protections that attend the operation of bonded warehouses that operate under the authority of § 129D, following these seizures.  Police officers and agencies cannot impose storage and impoundment fees, but bonded warehouses can.

4.     Plaintiffs seek declaratory relief and injunctive relief, and attorney's fees and costs, from all Defendants.  Plaintiffs seek money damages from Defendant Village Vault, Inc.

## PARTIES

5.     Plaintiff Russell Jarvis is a citizen and resident of the State of Massachusetts residing in Adams, Berkshire County, Massachusetts.

6.      Plaintiff James Jarvis is a citizen and resident of the State of Massachusetts residing in Adams, Berkshire County, Massachusetts.

7.      Plaintiff Robert Crampton is a citizen and resident of the State of Massachusetts residing in Tewksbury, Middlesex County, Massachusetts.

8.      Plaintiff Commonwealth Second Amendment, Inc. ("Comm2A") is a non-profit corporation organized under Massachusetts law with its principal place of business in Natick, Middlesex County, Massachusetts.

9.      Defendant Village Vault, Inc. is a corporation organized under Massachusetts law with its principal place of business in Northboro, Worcester County, Massachusetts.

10.     Defendant Mary E. Heffernan is Secretary of the Executive Office of Public Safety and is sued in her Official Capacity, only.  Secretary Heffernan's office is in Chelsea, Suffolk County, Massachusetts.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

12.     This Court has personal jurisdiction over each of the Defendants because, *inter alia*, they acted under the color of the laws of the State of Massachusetts and/or within the geographic confines of the State of Massachusetts.

13.     Venue is proper pursuant to 28 U.S.C. § 1391.

14.     The Central Division is appropriate pursuant to LR 40.1(D)(1)-(2) because:  there is no Division in which a majority of the Plaintiffs reside; there is no Division in which a majority of the parties reside; Defendant Village Vault, Inc. resides in the Division; and, the Central Division is central to the other parties.

## CONSTITUTIONAL PROVISIONS

15.     The Fourteenth Amendment provides in pertinent part:

> No State shall make or enforce any law which shall abridge the privileges
> or immunities of citizens of the United States; nor shall any State deprive
> any person of life, liberty, or property, without due process of law; nor
> deny to any person within its jurisdiction the equal protection of the laws.

16.     Furthermore, the Second Amendment protects "the right of the people to keep and bear Arms" as a fundamental civil right.  See McDonald v. Chicago, 130 S. Ct. 3020, 3042 (2010); see also id. at 3059 (Thomas, J., concurring).

## MASSACHUSETTS STATE LAWS

17.     Massachusetts State laws require a license to possess firearms, ammunition and ammunition components.  See M.G.L. c. 140, §§ 129B, 131.

18.     Massachusetts State laws authorize law enforcement officers to seize firearms and ammunition under various circumstances.  For example, law enforcement officers can seize guns when a person's firearms license has expired, see M.G.L. c. 140, § 129B, when a person's firearms license has been denied or revoked, see M.G.L. c. 140, § 129D, and when a person becomes subject to a restraining order, see M.G.L. c. 209A, § 3B.

19.     State law recognizes that an owner of firearms or ammunition has an ongoing proprietary interest in his or her firearms and ammunition following seizure under § 129D, or an event giving rise to seizure under § 129D.  For example, § 129D allows owners to reclaim their property or to have it transferred to third-parties.

20.     While law enforcement officers can seize and hold firearms and ammunition, State law does *not* authorize them to impose storage or other fees.  Rather, State law authorizes agencies to transfer firearms and ammunition to "bonded warehouses," which *can* impose storage fees.  See M.G.L. c. 140, § 129D.

21.     State law does not require law enforcement agencies to transfer firearms and ammunition to bonded warehouses.  If an agency elects to send firearms and ammunition to a bonded warehouse, the owner has no control of which bonded warehouse is used, nor does an owner have control over when the firearms and ammunition are sent.

22.     State law requires bonded warehouses to "store and maintain all weapons so received in accordance with such regulations, rules or guidelines as the secretary of the executive office of public safety may establish under this section."  M.G.L. c. 140, § 129D.

23.     State law provides that the owner must pay the bonded warehouse "reasonable storage charges," and that the bonded warehouse can auction firearms and ammunition "if the storage charges for such weapon have been in arrears for 90 days."  Id.

24.     Aside from providing that fees must be "reasonable," State law does not otherwise regulate the fees or terms that bonded warehouses impose.

25.     State law proscribes no rules for determining the value of the firearms and ammunition, nor does State law proscribe rules for ensuring the subsequent sale of firearms is done at arms' length and for their full fair and reasonable value.

26.     State law does not provide a hearing before a person is deprived of their firearms and ammunition.

## ROLE OF DEFENDANT VILLAGE VAULT

27.     Defendant Village Vault, Inc. ("Village Vault") operates a "bonded warehouse" pursuant to M.G.L. c. 140, § 129D in Northboro, Worchester County, Massachusetts.

28.     When Defendant Village Vault receives firearms or ammunition, it immediately imposes fees of $15 per item for "handling" as well as a $45 charge for "administration." However, Village Vault also requires the payment of a $20 per-item "disposition" or "transfer" fee to transfer firearms or ammunition from its custody (*e.g.* to the owner or to a third-party

designated by the owner).  Above and beyond these fees, Village Vault charges storage fees of $0.50 per day for each item (e.g. firearm or box of ammunition) received from the police.

29.     Village Vault requires an owner to pay all of its fees before recovering or transferring any particular item.  A person may not choose to redeem only some items.

30.     Other bonded warehouses in Massachusetts impose different fees and terms than does Defendant Village Vault, and moreover, the fees and terms that other bonded warehouses impose are generally not as excessive.

31.     Defendant Village Vault is a state actor within the purview of the Fourteenth Amendment when it acts as a bonded warehouse pursuant to M.G.L. ch. 140, § 129D, and also acts under color of State law, because it performs a traditional State function, and also because it has acted, and continues to act, jointly with the State.

<u>**ROLE OF DEFENDANT SECRETARY HEFFERNAN**</u>

32.     M.G.L. ch. 140, § 129D authorizes the Defendant Secretary of the Executive Office of Public Safety ("EOPS") to enact rules and regulations to govern the detention of firearms and ammunition and the operation of bonded warehouses under § 129D.

33.     However, Defendant Secretary Heffernan has not enacted any rules or regulations to govern the operation of bonded warehouses.

34.     A predecessor of Defendant Secretary Heffernan considered adopting bonded warehouse regulations in 2007, <u>see</u> 1086 Mass. Reg. 56 (Sept. 7, 2007), but declined to do so.

35.     The failure of Defendant Secretary Heffernan to enact adequate rules and regulations to govern the operation of bonded warehouse has deprived, and continues to deprive, Plaintiffs of their rights under the Due Process Clause of the Fourteenth Amendment.

## IMPACT ON PLAINTIFFS

Russell Jarvis and James Jarvis

36.     Russell Jarvis holds, and at all materials times held, a Massachusetts License to Carry Firearms (commonly known as an "LTC") that authorized him to possess all types of firearms (rifles, shotguns, and handguns) that are lawful in Massachusetts.

37.     James Jarvis also holds a valid LTC license.  As detailed herein, the LTC license of James Jarvis was suspended for a period of time.

38.     Russell Jarvis is the father of James Jarvis.  Both men are avid hunters, shooters, and gun collectors.  Several years ago, Russell Jarvis and James Jarvis built a secure, locking gun cabinet in the house in which James Jarvis previously lived, in Cheshire, Massachusetts.  From time to time, Russell Jarvis would store his guns in this gun cabinet.  James Jarvis also stored his own guns in this cabinet.

39.     James Jarvis separated from his (now former) wife and moved out of the Cheshire house in July 2010, leaving the firearms and ammunition locked in the gun cabinet.  Shortly thereafter, the former wife obtained an *ex parte* restraining order against James Jarvis that was valid for 30 days.  The restraining order prohibited James Jarvis from returning to the Cheshire house, where the firearms remained, and from possessing firearms and ammunition.

40.     Shortly thereafter, State Police came to the Cheshire house and seized firearms, ammunition, and other items from the gun cabinet.  Specifically, State Police seized 14 shotguns, 10 rifles, 3 handguns, and 2 containers of ammunition.  Many of these firearms were family heirlooms.  Russell Jarvis's own father had given him many of the guns.  The State Police also seized some items that are not "firearms" under Massachusetts law and are not subject to seizure, to wit, accessories like cases and scopes, 3 primitive (or "black powder") weapons, and 2 air (or "BB") guns.  Most of these firearms and other items were the property Russell Jarvis.

41.     Russell Jarvis visited the State Police barracks in Cheshire approximately two weeks later and requested that the State Police return the firearms, ammunition, and other items to him.  The State Police refused to do so because of the restraining order that remained in force against his adult son, James Jarvis.  A trooper told Russell Jarvis that items were safe and that they would remain at the State Police barracks until the restraining order expired.

42.     Both Russell Jarvis and James Jarvis repeatedly attempted to obtain the return of the firearms, ammunition, and other items from the State Police or their transfer to a third party such as a relative as allowed for under M.G.L ch. 140 § 129D.

43.     The former wife of James Jarvis sought and obtained another protective order from a different judge on August 10, 2010.  This protective order had a duration of 1 year.

44.     One day later, on August 11, 2010, the State Police transferred the firearms, ammunition, and other items to Defendant Village Vault.  The State Police did not tell Russell Jarvis or James Jarvis that they had transferred the items to Village Vault.

45.     Defendant Village Vault logged the firearms, ammunition, and other property as 34 separate items.  Defendant Village Vault then immediately imposed a $15 "handling" fee for each item (a total of $510) as well as a $45 "administration" fee.  Furthermore, Defendant Village Vault required a $20 per-item "registration" or "disposition" fee in order to secure the transfer of firearms and ammunition (a total of $680).  Hence, from the moment that Defendant Village Vault received the items, Russell Jarvis and James Jarvis would have needed to pay a total of $1,225 to secure their return or transfer.  This amount was 45.5% of the amount that Defendant Village Vault ultimately obtained for the items at auction.

46.     James Jarvis thereafter received a statement from Village Vault dated September 11, 2010 in the amount of $1,065.  James Jarvis contacted Village Vault by telephone and was

told that the $20 per-item "transfer" fee would also need to be paid to obtain the release of the items or their transfer to a third-party, which increased the actual cost to $1,745.  One month later, on October 11, 2010, the actual cost was $2,255.

47.     James Jarvis was going through a divorce and was out of money.  He had borrowed approximately $7,000 from his father to pay for his divorce attorneys, and he did not have the resources to pay these fees at the time.

48.     Russell Jarvis refused to pay the fees on the ground that Village Vault had no ground for charging him fees to obtain the return of his own property that had been taken without any involvement on his part.

49.     On April 5, 2011, May 21, 2011, and September 24, 2011, Village Vault auctioned the firearms, ammunition, and other items for a total of $2,695.  Thereafter, Village Vault sent James Jarvis a bill for $2,939.25.

50.     On August 10, 2011, the restraining order against James Jarvis expired.  James Jarvis subsequently had his LTC license reinstated and would have been eligible to retake possession of his firearms and ammunition.

Robert Crampton

51.     Plaintiff Robert Crampton ("Mr. Crampton") is an 84 year-old retired man who lives alone.  Mr. Crampton is a widower, a father, and a veteran of World War II.

52.     Mr. Crampton previously owned a 12-gauge J.C. Higgins hunting shotgun and a .32-caliber Harrington & Richardson revolver.  Mr. Crampton used the shotgun for hunting after he returned home from World War II.  Mr. Crampton took the revolver with him to the World War II and carried it with him while serving the United States in the European theater.

53.     In the 1960s, Mr. Crampton obtained a "Firearms Identification" ("FID") card, which stated that its "date of expiration" was "Indefinite unless revoked or suspended."

54.     Mr. Crampton lived in Florida in the 1990s.  In 1998 the State amended its firearms laws to provide that FID cards would no longer be indefinite.  Mr. Crampton was unaware of this change in State law when he moved back to Massachusetts in 2000.  Mr. Crampton did not receive any notice that his "Indefinite" FID card had expired.

55.     Mr. Crampton contacted Tewksbury Police following the burglary of his home while he was undergoing surgery.  Mr. Crampton showed Tewksbury police officers his "Indefinite" FID card in connection with the ensuing investigation.  On June 2, 2010 the police officers told Mr. Crampton that his FID was no longer valid and seized Mr. Crampton's revolver, shotgun, and a box of ammunition.

56.     The Tewksbury Police Department turned custody of the shotgun, revolver, and ammunition over to Defendant Village Vault on November 15, 2010.

57.     Village Vault immediately imposed a $15 "handling" fee for each of the three items (a total of $45) as well as a $45 "administration" fee.  Furthermore, Defendant Village Vault requires an owner to pay a $20 per-item "registration" or "disposition" fee in order to secure the transfer of firearms and ammunition (a total of $60).  Hence, from the moment that Defendant Village Vault received Mr. Crampton's firearms and ammunition, Mr. Crampton would have needed to pay a total of $150 to secure their return.  This is 81% of the amount ($185) that Village Vault obtained for the guns and ammunition at auction.  From this point forward, Village Vault imposed an additional $1.50 per day in "storage" fees.

58.     Mr. Crampton could not afford to pay the fees.  Had the fees been lower, Mr. Crampton would have paid the fees and had the items transferred to a family member.

59.     On September 24, 2011 and November 19, 2011 Village Vault auctioned off all three items for $185.  Village Vault then sent Mr. Crampton a bill for $401.

Commonwealth Second Amendment, Inc.

60.     Commonwealth Second Amendment, Inc. ("Comm2A") is a nonprofit organization recognized under § 501(c)(3) of the Internal Revenue Code.  The purposes of Comm2A include education, research, publishing and legal action focusing on the constitutional right privately to own and possess firearms.  Comm2A brings this action on behalf of itself and its supporters.  Comm2A expends significant resources assisting those people whose firearms are held by bonded warehouses under the authority of M.G.L. c. 140, § 129D, including specifically Defendant Village Vault.

61.     Supporters of Comm2A have had firearms seized pursuant to M.G.L. c. 140, § 129D and have suffered injury because of the procedural due process failures alleged in this Complaint – to wit, the absence of notice and an opportunity to be heard, and the absence of needed regulations of the fees and terms of bonded warehouses.

62.     In addition, both supporters of Comm2A and members of the general public have contacted Comm2A following the seizure of their firearms and ammunition and the transfer of those items to bonded warehouses.  Comm2A has expended time, energy, and money to consult with and provide assistance to these individuals, and particularly with regard to issues surrounding their inability to obtain the return or release of their property.

### FIRST CAUSE OF ACTION
### FAILURE TO PROVIDE A HEARING

63.     Plaintiffs hold a proprietary interest in their firearms and ammunition.  Moreover, the right to keep arms and ammunition is a fundamental civil right.

64.     The Due Process Clause requires that individuals be provided with notice and an opportunity to be heard before they are deprived of a property right.  This is especially the case where the proprietary right implicates the ability to exercise a fundamental constitutional right.

65.     While practicalities might at times justify the initial seizure of firearms and ammunition without an opportunity to be heard – an issue this case does not raise – there is no reason that a hearing cannot be provided before fees are incurred at a bonded warehouse.

66.     The provision of a hearing before a neutral third-party would have afforded relief for Plaintiffs because, for example:

    a.  a neutral third-party would have concluded Russell Jarvis was entitled to have his firearms, ammunition, and other items returned to him, in that he was not subject to the restraining order;

    b.  a neutral third-party would have concluded that Russell Jarvis and James Jarvis were entitled to the return of the items that were not "firearms" or "ammunition" subject to seizure;

    c.  the availability of review before a neutral third-party would benefit affected supporters of Comm2A whose firearms and ammunition are seized under § 129D; and

    d.  the availability of review before a neutral third-party would reduce the burden imposed on Comm2A by its supporters and the general public whose firearms and ammunition are seized under § 129D.

67.     Defendant Village Vault's act of imposing storage and other fees before notice and an opportunity to be heard violates the Due Process Clause of the Fourteenth Amendment.

68.     The failure of Defendants to provide for prompt notice and an opportunity to be heard before depriving individuals of protected constitutional and property interests violates of the Due Process Clause of the Fourteenth Amendment.

69.     The right to notice and an opportunity to be heard before being deprived of a property interest is a clearly established protection of the Due Process Clause.

**SECOND CAUSE OF ACTION**
**INADEQUATE PROCEDURAL PROTECTIONS**

70.     The Due Process Clause "is flexible and calls for such protections as the particular situation demands."   Greenholtz v. Inmates of Neb. Penal & Correctional Complex, 442 U.S. 1, 12 (1979) (quotation omitted).

71.     Defendant Secretary Heffernan has failed to adopt adequate regulations to protect citizens of Massachusetts from the risk of erroneous property deprivations as demanded by the situation presented by bonded warehouses.

72.     As a specific example, the State laws and regulations are inadequate because they do not provide for a definite time period in which bonded warehouses must provide notice of their involvement, of the accrual of fees, and of the statutory right of owners to redeem their property or to have it transferred to a third-party.  As a result, bonded warehouses may wait long periods of time, until substantial fees have accrued, before contacting owners.

73.     As another specific example, the State laws and regulations are inadequate because they do not meaningfully limit either the types of fees or the amount of fees that Bonded Warehouses may require as a condition of returning or transferring firearms and ammunition they hold under M.G.L. c. 140, § 129D.  As a result, some bonded warehouses impose numerous *ad hoc* fees that other bonded warehouses do not impose, and some bonded warehouses impose fees that are excessive and prohibitive.

74.     As another specific example, the State laws and regulations are inadequate because they do not regulate the repayment terms that bonded warehouses impose for obtaining the return or transfer of firearms and ammunition held under M.G.L. c. 140, § 129D.  For example, Defendant Village Vault assesses per-item fees on each firearm or ammunition

container that it receives, and it then requires that the owner pay *all* of its fees before obtaining the return of any one item.

75.     These deficiencies result in a risk of erroneous deprivation of constitutional and property interests that is unreasonable and unacceptable in light of the significance of the interests involved and the burden involved in adopting reasonable regulations, and deprive Plaintiffs the protection of the Due Process Clause of the Fourteenth Amendment.

76.     The existence of adequate regulations addressing the above deficiencies would have enabled Plaintiffs Russell Jarvis, James Jarvis, Robert Crampton, and the supporters of Comm2A to recover or transfer their firearms and ammunition without paying excessive or prohibitive storage fees, and adequate regulations would also lessen the burden caused on Commonwealth Second Amendment itself as a result of the application of M.G.L. c. 140, § 129D against its supporters and the general public, as set forth above.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

i.      Plaintiffs Russell Jarvis, James Jarvis, and Robert Crampton seek money damages from Defendant Village Vault (only) in the amount of the reasonable value of the firearms, ammunition, and other items that were auctioned by Defendant Village Vault;

ii.     all Plaintiffs seek declaratory judgment that M.G.L. ch. 140, § 129D violates the Due Process Clause to the extent it fails to provide for a hearing before a neutral third-party before a person becomes liable to pay storage fees to bonded warehouses;

iii.    all Plaintiffs seek declaratory judgment that M.G.L. ch. 140, § 129D violates the Due Process Clause to the extent it fails to provide for a hearing before a neutral third-party before a person is conclusively deprived of firearms, ammunition, and related components;

iv.     all Plaintiffs seek injunctive relief prohibiting Defendant Village Vault from imposing fees or charges before property owners have been provided with a meaningful opportunity to be heard;

v.      all Plaintiffs seek injunctive relief prohibiting Defendant Village Vault from auctioning firearms before property owners have been provided with a meaningful opportunity to be heard;

vi.     all Plaintiffs seek injunctive relief prohibiting Defendant Village Vault from imposing fees or charges until such time as Defendant Secretary Heffernan promulgates regulations to limit the type and amount of fees and the terms of fees;

vii.    all Plaintiffs seek injunctive relief directing Defendant Secretary Heffernan to promulgate regulations and rules providing for hearings before neutral-third parties, and notice of same, before bonded warehouses impose fees and before bonded warehouses conclusively deprive individuals of protected interests;

viii.   all Plaintiffs seek injunctive relief directing Defendant Secretary Heffernan to promulgate regulations and rules governing the types, amounts, and terms of fees imposed by bonded warehouses under the authority of M.G.L. ch. 140, § 129D;

ix.     all Plaintiffs seek such other and further relief, including further injunctive relief, as may be necessary to effectuate the Court's judgment, or as is otherwise just and equitable; and

x.      attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Dated: March 27, 2012

Respectfully submitted,

THE PLAINTIFFS,

By their attorneys,

/s/ Patrick M. Groulx
Patrick M. Groulx, Esq.
BBO No. 673394
POLIS LEGAL
P.O. Box 45504
Somerville, Massachusetts 02145
Tel:  978.549.3124
Fax:  617.500.9955
pgroulx@polislegal.com

/s/ David D. Jensen
David D. Jensen, Esq.
DAVID JENSEN PLLC
111 John Street, Suite 230
New York, New York 10038
Tel:  212.380.6615
Fax:  917.591.1318
david@djensenpllc.com
Application for Admission *Pro Hac Vice* Pending

*Attorneys for Plaintiffs*