# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL JARVIS; JAMES JARVIS; ROBERT CRAMPTON; and COMMONWEALTH SECOND AMENDMENT, INC.,<br><br>                     Plaintiffs,<br><br>    -against-<br><br>VILLAGE GUN SHOP, INC. d/b/a VILLAGE VAULT; and SECRETARY ANDREA CABRAL, in her Official Capacity as Secretary of the Executive Office of Public Safety and Security,<br><br>               Defendants. | CIVIL ACTION NO. 1:12-cv-40032 |

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PARTIAL SUMMARY JUDGMENT AGAINST VILLAGE GUN SHOP, INC.

David D. Jensen, Esq.
Admitted *Pro Hac Vice*
NYS Bar No. 4234449
DAVID JENSEN PLLC
111 John Street, Suite 230
New York, New York 10038
(212) 380-6615 tel
(917) 591-1318 fax
david@djensenpllc.com

Patrick M. Groulx, Esq.
BBO No. 673394
POLIS LEGAL
P.O. Box 760656
Melrose, Massachusetts 02176
(978) 549-3124 tel
(617) 500-9955 fax
pgroulx@polislegal.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

MATERIAL FACTS ................................................................................................. 2

    1) Police must hold guns for one year. ................................................................ 2

    2) The "bonded warehouse" amendment to § 129D ........................................... 2

    3) James and Russell Jarvis ................................................................................ 3

    4) Robert Crampton ............................................................................................ 5

    5) Transfer of the Property to Village Vault Without Prior Notice .................... 5

    6) Village Vault Imposes Fees ............................................................................ 6

    8) Village Vault Auctions the Guns ................................................................... 7

    9) There was Neither Notice nor an Opportunity for a Hearing ........................ 8

ARGUMENT ......................................................................................................... 9

    I)  VILLAGE VAULT IS A STATE ACTOR ......................................................... 9

    II)  VILLAGE VAULT AND § 129D CAUSED TWO SUCCESSIVE DEPRIVATIONS
        OF PROPERTY ......................................................................................... 12

        A.  Village Vault Imposed Fees and a Lien .................................................. 12

        B.  Village Vault Conclusively Deprived Plaintiffs of their Property ............. 13

    III) VILLAGE VAULT DID NOT PROVIDE DUE PROCESS ....................................... 14

        A.  Village Vault Imposed Fees and Took Possession without providing Notice
            or an Opportunity to be Heard ................................................................. 14

        B.  Village Vault Conclusively Deprived Plaintiffs of their Property Without
            Providing a Hearing ................................................................................ 16

        C.  Plaintiffs' Injuries Result from the Lack of Adequate Procedural Protections .......... 16

    IV) PLAINTIFFS ARE ENTITLED TO MONEY DAMAGES AND A DECLARATORY
        JUDGMENT ............................................................................................ 18

        A.  Declaratory Judgment ............................................................................. 18

        B.  Liability for Damages ............................................................................. 19

CONCLUSION ..................................................................................................... 20

**TABLE OF AUTHORITIES**

**CASES**

Addante v. Village of Elmwood Park, 541 F. Supp. 497 (N.D. Ill. 1982)................................... 11

Aetna Life Ins. Co. v. Haworth, 300 U.S. 227 (1937)................................ 18

Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40 (1999) ............................. 9

Amsden v. Moran, 904 F.2d 748 (1st Cir. 1990)........................................... 19

Armstrong v. Manzo, 380 U.S. 545 (1965) ................................................... 16

Arnold v. Delano, 58 Mass. 33 (1849)........................................................... 12

Assocs. Comm'l Corp. v. Wood, 22 F. Supp. 2d 502 (D. Md. 1998).............. 11, 13, 19

Bd. of Regents v. Roth, 408 U.S. 564 (1972) ................................................ 14

Belcher v. Norton, 497 F.3d 742 (7th Cir. 2007)........................................... 14

Blum v. Yaretsky, 457 U.S. 991 (1982) ...................................................... 9, 10

Boston v. Rockland Tr. Co., 460 N.E.2d 1269, 391 Mass. 48 (1984)........... 12

Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288 (2001) ........................ 9

Carey v. Piphus, 435 U.S. 247 (1978) .......................................................... 19

Coleman v. Turpen, 697 F.2d 1341 (10th Cir. 1982) .............................. 10, 13

County of Nassau v. Canavan, 802 N.E.2d 616, 1 N.Y.3d 134 (2003) ........ 17

Craig v. Carson, 449 F. Supp. 385 (M.D. Fla. 1978).............................. 13, 15

Draper v. Coombs, 792 F.2d 915 (9th Cir. 1986) ......................................... 18

Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991)............................. 9

Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1 (1st Cir. 2005)........................ 9

Ferrari v. County of Suffolk, no. 10-CV-4218, 2013 U.S. Dist. LEXI 110789
    (E.D.N.Y. Aug. 6, 2013)......................................................................... 17, 20

Gallant v. City of Fitchburg, 739 F. Supp. 2d 39 (D. Mass. 2010)............... 13

Ginorio v. Contreras, 409 F. Supp. 2d 101 (D.P.R. 2006)............................ 19

Goichman v. Rhueban Motors, Inc., 682 F.2d 1320 (9th Cir. 1982)............. 10

Graff v. Nicholl, 370 F. Supp. 974 (N.D. Ill. 1974) ................................. 15, 19

Hale v. Tyree, 491 F. Supp. 622 (E.D. Tenn. 1979)..................................... 18

Hann v. Carson, 462 F. Supp. 854 (M.D. Fla. 1978)............................... 11, 15

Jackson v. Metropolitan Edison Co., 419 U.S. 345 (1974) .......................... 11

Krimstock v. Kelly, 306 F.3d 40 (2d Cir. 2002)...................................... 2, 17-18

Krimstock v. Kelly, no. 99 Civ. 12041, 2007 U.S. Dist. LEXIS 82612
(S.D.N.Y. Oct. 1, 2007) ........................................................................................ 17

Lawrence v. Reed, 406 F.3d 1224 (10th Cir. 2005) ............................................ 19

Liberty Mut. Ins. Co. v. Market St. Garage & Towing Serv., Inc., 307 N.E.2d 858
(Mass. App. Ct. 1974) .......................................................................................... 12

Logan v. Zimmerman Brush Co., 455 U.S. 422 (1982) .................................. 12, 14

Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982) ............................................... 9

Maguire v. Old Orchard Beach, 783 F. Supp. 1475 (D. Me. 1992) ...................... 19

Matthews v. Eldridge, 424 U.S. 319 (1976) ........................................................ 16

Mays v. Scranton City Police Dep't, 503 F. Supp. 1255 (M.D. Penn. 1980) ......... 11, 13, 15

Messere v. Fair, 752 F. Supp. 48 (D. Mass. 1990) .............................................. 20

Miller v. City of Chicago, no. 82 C 1607, 1983 U.S. Dist. LEXIS 11520
(N.D. Ill. Nov. 18, 1983) ..................................................................................... 18

Morrissey v. Brewer, 408 U.S. 471 (1972) .......................................................... 14

Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306 (1950) ....................... 1, 14-15

Perkins v. Londonberry Basketball Club, 196 F.3d 13 (1st Cir. 1999) ................. 10

Propert v. District of Columbia, 948 F.2d 1327 (D.C. Cir. 1991) ................... 13, 19, 20

Remm v. Landrieu, 418 F. Supp. 542 (E.D. La. 1976) .................................... 13, 15

Sandia v. Rivera, 46 P.3d 108, 132 N.M. 201 (2002) ......................................... 13

Smith v. Insley's Inc., 499 F.3d 875 (8th Cir. 2007) ........................................... 10

Spinelli v. City of New York, 579 F.3d 160 (2d Cir. 2009) ......................... 2, 19, 20

Stypmann v. City and County of San Francisco, 557 F.2d 1338 (9th Cir. 1977) ........... 11, 15

Sutton v. City of Milwaukee, 521 F. Supp. 733 (E.D. Wis. 1981) ........................ 15

Tedeschi v. Blackwood, 410 F. Supp. 34 (D. Conn. 1976) .............................. 11, 19

United States v. Daccarett, 6 F.3d 37 (2d Cir. 1993) ........................................... 13

United States v. Price, 383 U.S. 787 (1966) ........................................................ 11

United States v. Rehlander, 666 F.3d 45 (1st Cir. 2012) ................................... 2, 16

Verdi v. City of Philadelphia, 553 F. Supp. 334 (E.D. Penn. 1982) ..................... 11

Weinrauch v. Park City, 635 F. Supp. 91 (D. Utah 1988) .................................... 11

West v. Atkins, 487 U.S. 42 (1988) ...................................................................... 10

Wright v. City of Reno, 533 F. Supp. 58 (D. Nev. 1981) ........................... 11, 13, 15

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. XIV ................................................................................. 12, 13

## Statutes

1968 Mass. Acts. ch. 737, sec. 7 ................................................................................... 2

1972 Mass. Acts ch. 312, sec 2 ...................................................................................... 5

1998 Mass. Acts ch. 180, sec. 36 ................................................................................... 2

1998 Mass. Acts ch. 180, sec. 73 ................................................................................... 5

28 U.S.C. § 2201 ........................................................................................................... 18

M.G.L. c. 140, § 121 ................................................................................................... 2, 4

M.G.L. c. 140, § 129B ................................................................................................. 2, 5

M.G.L. c. 140, § 129D ........................................................................................... *passim*

M.G.L. c. 140, § 131 ....................................................................................................... 3

M.G.L. c. 209A, § 3B ................................................................................................. 2, 4

M.G.L. c. 209A, § 4 ......................................................................................................... 4

M.G.L. c. 239, § 4 ........................................................................................................... 8

## Other Authorities

1086 Mass. Reg. 56 (Sept. 7, 2007) ............................................................................... 3

Executive Office of Public Safety and Security, Frequently Asked Questions, available at
http://www.mass.gov/eopss/firearms-reg-and-laws/frb/frequently-asked-questions.html
(last visited Oct. 14, 2013) ........................................................................................ 4

## INTRODUCTION

Massachusetts state law (M.G.L. c. 140, § 129D) gives Defendant Village Gun Shop, Inc. d/b/a Village Vault ("Village Vault") the power to both impose fees and conclusively take property – without providing owners with prior notice or any opportunity for a hearing.  This violates the Due Process Clause's basic requirement that deprivations of property "be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 313 (1950).  The Court appeared to agree at the hearing held on October 4, 2012, as it requested that the Defendant Secretary consider adopting regulations to govern Village Vault and businesses like it.  See Doc. No. 20.  This proposed resolution of the case still leaves Plaintiffs' claims for declaratory relief and money damages. These claims present no issues of fact:  Defendant Village Vault deprived Plaintiffs of protected property interests in violation of the Due Process Clause.

After presenting the pertinent background facts, this brief establishes the preliminary point that Defendant Village Vault – whose services were retained by the police, not the Plaintiffs – is liable as a "state actor" under the nexus/joint action test.  Point II explains that Village Vault deprived Plaintiffs of property by both imposing fees and a lien, and by then conclusively taking the property to pay its fees.  Point III shows that neither § 129D nor Village Vault provided due process, and Point IV accordingly concludes that Plaintiffs are entitled to a declaratory judgment and summary judgment as to liability.

Plaintiffs rely substantially on authorities that concern a somewhat analogous issue:  the impoundment of motor vehicles at the behest of police officers.  While the analogy is not perfect, it is instructive.  Both motor vehicles and firearms raise public safety concerns and may, on occasion, need to be seized by police.  Yet, deprivations of either interest raise substantial (albeit

somewhat different) due process concerns.  Aside from being "property" that the Due Process Clause protects, firearms also implicate the protections of the Second Amendment.  See United States v. Rehlander, 666 F.3d 45, 48 (1st Cir. 2012); Spinelli v. City of New York, 579 F.3d 160, 171 (2d Cir. 2009).  Although motor vehicles enjoy no *per se* constitutional protection, courts recognize the "particular importance" that cars can have "as a mode of transportation and, for some, the means to earn a livelihood."  See Krimstock v. Kelly, 306 F.3d 40, 61 (2d Cir. 2002).

## MATERIAL FACTS

1) Police must hold guns for one year.  Under certain circumstances, Massachusetts law authorizes police officers to seize privately held guns[1] and ammunition, even though they are not needed as evidence of a crime.  For example, police can seize guns when a person's firearms license has expired or has been denied or revoked, see M.G.L. c. 140, §§ 129B, 129D, or when a person becomes subject to a restraining order, see id. c. 209A, § 3B.  Under these circumstances, § 129D of Chapter 140 of the Massachusetts General Laws requires police to hold the guns and ammunition for a period of one year.  See id. c. 140, § 129D.  During this period, the owner has the statutory "right" to transfer his or her property to any other person who is qualified to possess it.  See id.  Massachusetts law has included this one-year redemption right since 1968, when it first adopted universal gun-owner licensing and authorized police to seize firearms and ammunition from people without valid licenses.  See 1968 Mass. Acts. ch. 737, sec. 7, § 129D.

2) The "bonded warehouse" amendment to § 129D.  The legislature amended § 129D in 1998 to allow police agencies to transfer seized firearms and ammunition to licensed gun dealers that operate "bonded warehouses."  See 1998 Mass. Acts ch. 180, sec. 36.  The statutory requirements of a "bonded warehouse" are:  (1) federal and state licensure as a gun dealer; and

---

[1] Plaintiffs use the term "guns" to refer to "rifles," "shotguns," and "firearms" (*e.g.* handguns), as defined in Massachusetts law.  M.G.L. c. 140, § 121.

(2) "a safe for the secure storage of firearms and a weapon box or similar container for the secure storage of other weapons and ammunition."   M.G.L. c. 140, § 129D.[2]   When a bonded warehouse takes custody of guns and ammunition, it acquires statutory powers that police departments do not enjoy.  First, the bonded warehouse acquires the ability to charge storage fees against the owner of the guns.  See id.  Second, the bonded warehouse acquires the ability to sell the property if its fees are unpaid for 90 days.  See id.

The only notice § 129D requires is a "receipt" that the bonded warehouse sends *after* it takes custody.  See id.  Hence, the status quo changes, and property owners become liable for fees, without any prior notice.  The statute also does not provide any right to a hearing.  The only restriction on fees is the directive that they be "reasonable."  See M.G.L. c. 140, § 129D. Although § 129D authorizes Defendant Secretary Cabral to adopt regulations, see id., no regulations have ever been adopted, see 1086 Mass. Reg. 56 (Sept. 7, 2007).

3) James and Russell Jarvis.  Plaintiffs James Jarvis ("James") and Russell Jarvis ("Russell") are a father and son (respectively) who are sportsmen and gun enthusiasts.  Plaintiffs' Statement of Undisputed Facts ("Plf. Stmt.") ¶¶ 1-3.  Both hold valid "Licenses to Carry Firearms" (or "LTC's") that authorize them to possess handguns, rifles, and shotguns.  Plf. Stmt. ¶¶ 4-6; see M.G.L. c. 140, § 131(a)-(b).  Previously, James and Russell each owned collections of guns, ammunition, and related accessories, which they stored in a locked gun cabinet in James's house in Cheshire, Massachusetts.  Plf. Stmt. ¶¶ 7-9.  Russell stored his guns at James's house in order to avoid leaving them unattended, as he spends part of each year in Florida.  Plf. Stmt. ¶¶ 10-11.  In addition, James Jarvis, Jr. ("James Jr."), the adult son of James (and grandson of Russell) also stored several guns that he owned in this locked cabinet.  Plf. Stmt. ¶¶ 12-14. James Jr. has assigned his claim to Russell.  Plf. Stmt. ¶ 15.

---

[2] Nothing in the letter of the law requires a "bonded warehouse" to obtain a bond.  See M.G.L. c. 140, § 129D.

James separated from his wife in July 2010 and relocated from the Cheshire home to Russell's home in Adams.  Plf. Stmt. ¶ 16.  When James moved out, he left all of the guns and ammunition behind in the locked gun cabinet in the Cheshire house, along with other items that he intended to retrieve later.  Plf. Stmt. ¶ 17.  At that same time, James's former wife reported an argument between herself and James to the police and obtained an order of protection pursuant to M.G.L. c. 209A, § 4.  Plf. Stmt. ¶¶ 18-20.  This caused the suspension of James's LTC and made him temporarily ineligible to own guns.  See M.G.L. c. 209A, § 3B.  James's LTC was reinstated after the order of protection expired in 2011, and it remains valid today.  Plf. Stmt. ¶¶ 5, 21.

That evening, acting pursuant to the protective order, Massachusetts State Police took custody of 30 guns and several containers of ammunition from the Cheshire home.  Plf. Stmt. ¶¶ 22-25.  Most of the guns belonged to Russell and James Jr., who were not subject to the order of protection.  Plf. Stmt. ¶ 26.  The State Police also took custody of some cases and scopes, 3 primitive (or "black powder") weapons, and 2 air (or "BB") guns.  Plf. Stmt. ¶¶ 27-30.  These items were not guns under Massachusetts law and were not subject to seizure under § 129D.  Plf. Stmt. ¶¶ 31-32; see M.G.L. c. 140, § 121 (definitions).[3]  State Police told James Jarvis, Jr., who was present at the time, that the seizure was standard procedure, and that the Jarvises would be able to reclaim their property in the future.  Plf. Stmt. ¶ 34.

About 3 weeks later, both Russell and James Jr. visited the State Police barracks in Cheshire, explained that most of the items belonged to them, rather than to James, and requested the return of their property.  Plf. Stmt. ¶ 35.  Personnel in the State Police office reassured both Russell and James Jr. that the guns, ammunition, and other items would be returned once the order of protection had expired.  Plf. Stmt. ¶ 36.

---

[3] See also Executive Office of Public Safety and Security, Frequently Asked Questions, available at http://www.mass.gov/eopss/firearms-reg-and-laws/frb/frequently-asked-questions.html (last visited Oct. 14, 2013) (air guns are not regulated as guns and do not require licenses).

4) Robert Crampton.  Plaintiff Robert Crampton ("Robert") is 86 years old and resides in Tewksbury, Massachusetts.   Plf. Stmt. ¶ 37.   Robert previously owned a Harrington & Richardson .32 caliber revolver and two J.C. Higgins 12 gauge hunting shotguns.  Plf. Stmt. ¶ 38.   Robert is a World War II veteran, and he carried the revolver while serving the United States.   Plf. Stmt. ¶ 39.   In 2010, burglars broke into Robert's home while he was away undergoing surgery and stole some money and other valuables.  Plf. Stmt. ¶ 40.  When Robert returned home, he contacted the Tewksbury Police Department to report the crime.  Plf. Stmt. ¶ 41.  In the course of their investigation, the police learned that Robert owned the guns.  Id.

Mr. Crampton showed the police officers a "Firearms Owners Identification Card" (or "FID") that he had obtained in the 1970s.  Plf. Stmt. ¶¶ 42, 45.  This FID stated that its "DATE OF EXPIRATION" was "Indefinite unless revoked or suspended."  Plf. Stmt. ¶ 43.   However, Mr. Crampton was unaware that the Massachusetts legislature had changed the law governing FID's in 1998 to affirmatively provide for their expiration every six years.  Plf. Stmt. ¶ 44; see 1998 Mass. Acts ch. 180, sec. 73, codified as amended at M.G.L. c. 140, § 129B(9); see also 1972 Mass. Acts ch. 312, sec 2 (prior statute).  Mr. Crampton was living in Florida at the time of the 1998 change, and he remained unaware of the change when he moved back to Massachusetts.  Plf. Stmt. ¶ 44.  Tewksbury police officers took custody of Mr. Crampton's revolver, shotguns, and ammunition, as well as cases for the guns, on June 2, 2010.  Plf. Stmt. ¶ 46.

5) Transfer of the Property to Village Vault Without Prior Notice.  Defendant Village Vault operates as a "bonded warehouse" in Northboro, Massachusetts.  Plf. Stmt. ¶¶ 47-48.  Massachusetts State Police transferred the Jarvises' guns and other items to Defendant Village Vault on August 11, 2010, and the Tewksbury Police Department transferred Robert Crampton's guns and other items to Village Vault on November 15, 2010.  Plf. Stmt. ¶¶ 49, 53.  None of the

Plaintiffs were aware that a third party would take custody of their property, nor that the third party would charge them fees and have the power to take the property.  Plf. Stmt. ¶¶ 50, 54.  Had they known, they would have objected, and they would have pursued alternative arrangements, such as transferring their guns to a friend or third party, proposing a different "bonded warehouse," or attempting to negotiate their own terms with Village Vault.  Plf. Stmt. ¶¶ 51, 55. The first notice that the Plaintiffs received were the "receipts" that Village Vault sent a few days later, notifying them that they had become liable for Village Vault's fees.  Plf. Stmt. ¶¶ 52, 56.

6) Village Vault Imposes Fees.  Section 129D authorizes Defendant Village Vault to impose fees on the owners of guns and ammunition that it receives from police departments.  See M.G.L. c. 140, § 129D.  Acting pursuant to this authority, Village Vault imposed two up-front fees as soon as it received the guns and other items of the Plaintiffs:  a single fee of $45 for "administration" and a $15 per-item fee for "handling."  Plf. Stmt. ¶ 57.  Defendant Village Vault then began imposing "storage" charges of $0.50 per item, per day.  Plf. Stmt. ¶ 58.  Village Vault logged the Jarvises' guns, ammunition, and accessories as 34 "items."  Plf. Stmt. ¶ 59. Village Vault logged Robert's guns and other property as 3 "items."  Plf. Stmt. ¶ 60.

7) Plaintiffs Try to Obtain Return of their Property.  Russell called Village Vault as soon as he and James first received notice that Village Vault had their property.  Plf. Stmt. ¶ 61. Village Vault personnel told Russell that, aside from the aforesaid fees, he would also need to pay an additional "registration" fee of $20 per gun to "transfer" the guns to a third-party – and that he would need to pay this fee to "transfer" the guns to himself, since the State Police paperwork identified James (not Russell) as the owner.  Plf. Stmt. ¶¶ 62-63.  Hence, from the first moment that James and Russell Jarvis received *any* notice, they would have needed to pay

$1,231 in order for Russell to redeem the guns and other items, or alternatively, to transfer them to a qualified friend or relative or another licensed firearms dealer.  Plf. Stmt. ¶ 64.

Robert also called Village Vault as soon as he received its notice.  Plf. Stmt. ¶ 65. Because he also needed to "transfer" the 3 guns to a qualified third party,[4] the cost of redeeming the guns was $156 at the moment that Mr. Crampton first received notice of Village Vault's custody and claimed fees.  Plf. Stmt. ¶¶ 66-67.

The Jarvises tried further to recover their guns from Village Vault.  In early 2011, James contacted a licensed gun dealer in Pittsfield that had provided "bonded warehouse" services in the past.  Plf. Stmt. ¶ 68.  The store offered to store the guns for about $30 per month.  Plf. Stmt. ¶ 69.  However, the Jarvises still could not afford to pay the fees that Village Vault required to "transfer" and release the guns.  Plf. Stmt. ¶ 70.  James then spoke with a second licensed gun dealer that could provide "bonded warehouse" services.  Plf. Stmt. ¶ 71.  The owner of this store agreed, as a favor, to pay Village Vault's fees, and to then sell some of the guns in order to cover these fees.  Plf. Stmt. ¶ 72.  However, upon learning that Village Vault required payment of approximately $2,700 to transfer and release the guns, the store owner advised that it would likely not be profitable to pursue this option.  Plf. Stmt. ¶ 73.

8) Village Vault Auctions the Guns.  The Plaintiffs could not afford to pay the fees demanded by Village Vault.  James was going through a divorce, Russell was retired, and Robert lived on a fixed income and had just lost the cash savings he had in his house.  Plf. Stmt. ¶¶ 74-76.  Village Vault sent bills and, when they were not paid, it took and auctioned the guns, ammunition, and other property.  Plf. Stmt. ¶¶ 77-78, 80.  Village Vault auctioned the Jarvises' property on two dates in 2011 for the sum of $2,695.  Plf. Stmt. ¶ 78.  Village Vault claims it is

---

[4] Like Plaintiff Russell Jarvis, Plaintiff Robert Crampton could not redeem the guns himself because he did not hold a valid license.  Redeeming the guns from Village Vault necessarily involved transferring them to another person.

entitled to fees totaling $5,634.25 (or $2,939.25 after deducting the auction proceeds) from Plaintiff James Jarvis for the storage services it performed – an amount that is over 200% of the auction proceeds it ultimately realized.   Plf. Stmt. ¶ 79.   Village Vault auctioned Robert Crampton's guns and ammunition on two dates in 2011 for the sum of $185.   Plf. Stmt. ¶ 80. Village Vault asserts fees totaling $586 (or $401 after deducting the auction proceeds) for its storage services – over 300% of the auction proceeds.   Plf. Stmt. ¶ 81.

   9) There was Neither Notice nor an Opportunity for a Hearing.   None of the Plaintiffs received any prior notice that Defendant Village Vault would take custody of their property and impose fees.   Plf. Stmt. ¶¶ 50, 54.   None of the Plaintiffs was provided with the opportunity for a hearing.   Plf. Stmt. ¶¶ 82-84.   By the time that the Plaintiffs received notice, they were already subject to fees that they could not afford to pay – and they ultimately lost their property as a result.   However, prior notice would have enabled the Plaintiffs to make other arrangements that would have avoided Village Vault's fees and the loss of their property.   Plf. Stmt. ¶¶ 51, 55.

   In contrast, Massachusetts law provides considerably more procedural protection to owners of personal property that a landlord removes in connection with an eviction.   A landlord seeking to remove personal property must serve notice on the owner at least 48 hours *before* doing so.   See M.G.L. c. 239, § 4(a).   This notice must include both the name and contact information of the "public warehouser" that will take custody of the property, as well as information to obtain the warehouse's rates.   See id.   The warehouse must submit its rates to the Commissioner of Public Safety for advance approval.   See id. § 4(b)(2)-(3).   Furthermore, property owners have the right, after receiving the notice, to direct landlords to use different warehouses of their own choosing.   See id. § 4(a).   Finally, a property owner has the right to petition the court that ordered the eviction for relief against the warehouse.   See id. § 4(h).

**ARGUMENT**

**I) <u>VILLAGE VAULT IS A STATE ACTOR</u>**

Because Village Vault acted pursuant to a state law (M.G.L. c. 140, § 129D), the Due Process Clause governs its actions so long as it "may fairly be said to be a state actor." <u>See</u> <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937 (1982) (two-part test for state action); <u>see also</u> <u>Edmonson v. Leesville Concrete Co.</u>, 500 U.S. 614, 621 (1991). The "fair attribution" issue "is a matter of normative judgment" that turns on "a host of factors" that the Supreme Court has identified over time. <u>See</u> <u>Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n</u>, 531 U.S. 288, 295-96 (2001). Yet, while "no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient," <u>id.</u> at 295, the conduct here does not present a close question. As the Court observed in <u>Lugar</u>, fair attribution lies where a person "has acted together with or has obtained significant aid from state officials." <u>Lugar</u>, 457 U.S. at 937. The facts of this case present a textbook case of "private" state action under this "nexus/joint action test." <u>See</u> <u>Estades-Negroni v. CPC Hosp. San Juan Capestrano</u>, 412 F.3d 1, 5 (1st Cir. 2005) (articulating various fair attribution tests).

The "fair attribution" question "begins by identifying 'the specific conduct of which the plaintiff complains.'" <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 51 (1999) (quoting <u>Blum v. Yaretsky</u>, 457 U.S. 991, 1004 (1982)). The conduct at issue here is the storage of guns at the behest of police agencies that have seized them pursuant to § 129D. Village Vault acquires the power to impose fees on nonconsenting property owners, and to take the property in order to pay its fees, because police have seized the property and have a statutory duty to store it.

This is a straightforward example of state action under the "nexus" or "joint action" test, which holds private companies liable when "the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert,' that the challenged conduct

fairly can be attributed to the State." <u>Perkins v. Londonberry Basketball Club</u>, 196 F.3d 13, 19 (1st Cir. 1999) (quoting <u>Blum</u>, 457 U.S. at 1004).  The deprivations at issue here flow directly from the state's exercise of coercive power, for if the police never seized the Plaintiffs' guns, then *ipso facto* they would have never turned them over to Village Vault for storage.

The fact that Village Vault is performing duties that the police would otherwise be obliged to perform bolsters the conclusion that Village Vault is a state actor.  <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 56 (1988) ("The State bore an affirmative obligation to provide adequate medical care to West; the State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract.").  When police seize guns, Massachusetts law *requires* them to hold those guns for a period of one year, and to protect the owner's statutory "right . . . to transfer" the guns "to any licensed dealer or any other person legally permitted to purchase or take possession."  <u>See</u> M.G.L. c. 140, § 129D.  Police have no authority to impose fees or to auction guns in order to pay fees.[5]  Police agencies *avoid* this statutory obligation by turning guns over to the custody of "bonded warehouses" like Village Vault.  <u>See</u> <u>id.</u>

In the context of automobile towing and impoundment, virtually all courts to consider the question have held that private companies that tow and impound cars are "state actors" when the following two factors are present:  (1) they act pursuant to a state or local law; and (2) they act at the request of police officers.  <u>See</u> <u>Smith v. Insley's Inc.</u>, 499 F.3d 875, 880 (8th Cir. 2007) ("The entire time that Insley's stored Smith's truck, and later sold it, was as a result of the initial criminal investigation tow."); <u>Coleman v. Turpen</u>, 697 F.2d 1341, 1345 (10th Cir. 1982) ("Kiefer jointly participated in seizing the truck by towing it away."); <u>Goichman v. Rhueban Motors, Inc.</u>, 682 F.2d 1320, 1322 (9th Cir. 1982); <u>Stypmann v. City and County of San Francisco</u>, 557 F.2d

---

[5] The police can auction a gun that is not reclaimed after one year (not 90 days), but the proceeds go to the state treasury, rather than the police department.  <u>See</u> M.G.L. c. 140, § 129D.

1338, 1341-42 (9th Cir. 1977); Assocs. Comm'l Corp. v. Wood, 22 F. Supp. 2d 502, 506 n.6 (D. Md. 1998); Weinrauch v. Park City, 635 F. Supp. 91, 94 (D. Utah 1988) ("a person who impounds vehicles for a municipality is a state actor"); Addante v. Village of Elmwood Park, 541 F. Supp. 497, 499 (N.D. Ill. 1982) (private towing company's "act of towing was an integral part of-and a causal factor in-the alleged due process violation"); Wright v. City of Reno, 533 F. Supp. 58, 63 (D. Nev. 1981); Mays v. Scranton City Police Dep't, 503 F. Supp. 1255, 1263-64 (M.D. Penn. 1980); Hann v. Carson, 462 F. Supp. 854, 868-69 (M.D. Fla. 1978); Tedeschi v. Blackwood, 410 F. Supp. 34, 41-42 (D. Conn. 1976) (three-judge court).   As the Court of Appeals for the Ninth Circuit explained:

> The towing company tows the vehicle only at the direction of the officer.  The officer designates the garage to which the vehicle will be towed.  The officer notifies the owner that his vehicle has been removed, the grounds for the action, and the place of storage.  The towing company detains the vehicle and asserts the lien for towing and storage charges pursuant to a statutory scheme designed solely to accomplish the state's purpose of enforcing its traffic laws.  Thus, the private towing company is a "willful participant in a joint activity with the State or its agents," and there is a "sufficiently close nexus between the State and the challenged action of the towing company so that the action of the latter may be fairly treated as that of the State itself."

Stypmann, 557 F.2d at 1341-42 (quoting United States v. Price, 383 U.S. 787, 794 (1966) and Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974)) (alteration omitted).  The same basic facts are presented here – police officers seized the Plaintiffs' property (in this case, guns), and they directed a private company to hold the property following their seizure.  The private company then asserted fees and took the property to pay the fees.  "To the extent that these situations are parallel, the same result is dictated."  See Verdi v. City of Philadelphia, 553 F. Supp. 334, 336-37 (E.D. Penn. 1982) (relying on towing and impound cases to conclude that a private company that demolished a building pursuant to a government contract was a state actor).

## II) VILLAGE VAULT AND § 129D CAUSED TWO
## SUCCESSIVE DEPRIVATIONS OF PROPERTY

The Due Process Clause requires state actors to provide "due process of law" when they deprive people of (*inter alia*) "property" interests.  U.S. Const. amend. XIV.  The first question in the two-step analysis that governs procedural due process claims is whether a "protected interest" has been deprived.  See Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982).  In this case, there were two successive deprivations of property.

### A. Village Vault Imposed Fees and a Lien

While § 129D made Plaintiffs "liable to [Village Vault] for reasonable storage charges," the statute does not provide police departments with this power; they must hold guns for one year at no charge.  See M.G.L. c. 140, §129D.  Village Vault also acquired a lien in the property, as § 129D authorizes bonded warehouses to auction guns if storage charges go unpaid.  See id.[6] These statutory powers are a material change to the status quo, for Massachusetts common law would not otherwise allow Village Vault to impose fees and liens against property owners with whom it had no contract.  See Liberty Mut. Ins. Co. v. Market St. Garage & Towing Serv., Inc., 307 N.E.2d 858, 858-59 (Mass. App. Ct. 1974) (private company that tows and stores a vehicle at the request of police has "no lien at common law" and cannot withhold vehicle from owner in absence of a statute that provides it with a lien).

Courts addressing vehicle storage and impoundment charges have been uniform in concluding that the obligation to pay charges, and the concomitant power to lien those charges against vehicles, is a deprivation of "property."  For example, the Supreme Court of New Mexico concluded that a requirement to pay a fee in order to obtain the release of a vehicle "implicat[es]

---

[6] While § 129D does not use the term "lien," its authorization to sell property to satisfy fees implies the power to retain custody of property for that purpose – which is the definition of a lien.  See Boston v. Rockland Tr. Co., 460 N.E.2d 1269, 1273, 391 Mass. 48, 55 (1984) ("The very definition of a lien is, a right to hold goods, the property of another, in security for some debt, duty or other obligation."  (quoting Arnold v. Delano, 58 Mass. 33, 38 (1849))).

the right to due process no less than the initial towing" of the vehicle.  See Sandia v. Rivera, 46 P.3d 108, 110, 132 N.M. 201, 203 (2002).   One federal district court characterized "the assessment of towing fees and storage charges" as a "depriv[ation] of a significant property interest."  Remm v. Landrieu, 418 F. Supp. 542, 548 (E.D. La. 1976); see also Mays, 503 F. Supp. at 1262 ("towing and assertion of a de facto lien for towing and storage charges subjects an automobile owner to a significant deprivation").  Another district court observed that even if the towing or detention of a vehicle alone did not constitute a deprivation, still "the failure to afford a hearing prior to imposing a lien for storage costs in favor of the towing company is [a] constitutional violation."  Wright, 533 F. Supp. at 64; see also Craig v. Carson, 449 F. Supp. 385, 392 (M.D. Fla. 1978) (plaintiffs "have two interests at stake in these ordinances:  the impounded cars and the required charges").

### B.  Village Vault Conclusively Deprived Plaintiffs of their Property

Village Vault also deprived Plaintiffs of Fourteenth Amendment "property" when it auctioned their guns and other times to pay its fees.  See Gallant v. City of Fitchburg, 739 F. Supp. 2d 39, 46 (D. Mass. 2010) (demolition of plaintiff's building was a deprivation of property); see also United States v. Daccarett, 6 F.3d 37, 46 (2d Cir. 1993) ("seizure and forfeiture are two distinct events").   In the motor vehicle context, courts have uniformly found that the complete taking of a vehicle – whether by destruction or by sale to a third-party – is a deprivation of protected property interests.  See Propert v. District of Columbia, 948 F.2d 1327, 1331 (D.C. Cir. 1991) (destruction of motor vehicle was deprivation); Coleman, 697 F.2d at 1344-45 (auction of vehicle and other property to third-party); Assocs. Comm'l, 22 F. Supp. 2d at 505 (sale to third party that divested plaintiff of title by operation of state law).  Of course, a lien for towing and storage services "d[oes] not eliminate" a person's property interest, and due

process requirements continue to apply to the conclusive taking of property that is subject to a lien.  See Belcher v. Norton, 497 F.3d 742, 750 (7th Cir. 2007).

### III) VILLAGE VAULT DID NOT PROVIDE DUE PROCESS

The Due Process Clause requires "*at a minimum*" that deprivations of property "be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 313 (1950) (emphasis added).  Beyond this, "due process is flexible and calls for such procedural protections as the particular situation demands."  Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  Neither Village Vault nor § 129D provide even the minimal requirements of due process – notice and an opportunity to be heard.

### A. Village Vault Imposed Fees and Took Possession without providing Notice or an Opportunity to be Heard

Section 129D does not provide for any hearing at all – at any point in time.  Moreover, the only notice requirement that § 129D contains is its mandate that the bonded warehouse "issue to the owner a receipt indicating the make, model, caliber, serial number and condition of each weapon so received."  M.G.L. c. 140, § 129D.  Village Vault provided the requisite "receipt" to Plaintiffs only *after* it had taken custody of their property and imposed substantial fees.  Hence, Plaintiffs did not receive notice that Village Vault would take custody of their property and impose fees; rather, they received notice that Village Vault had already done so.

This violates basic principles of due process.  The lack of a hearing plainly violates due process, as "it has become a truism that '*some* form of hearing' is required before the owner is finally deprived of a protected property interest."  Logan, 455 U.S. at 433 (quoting Bd. of Regents v. Roth, 408 U.S. 564, 570-571 n.8 (1972) (emphasis in source)).  The after-the-fact receipt that § 129D requires is patently inadequate as notice because the "receipt" comes only after a property owner has become liable for the fees.  This notice is not "reasonably calculated,

under all the circumstances, to apprise interested parties of the pendency of the action and afford

them an opportunity to present their objections." <u>Mullane</u>, 339 U.S. at 314.   Rather, a property

owner faces an impermissible "proverbial Hobson's choice:  he must pay the charges assessed

against him or forfeit his" property.  <u>See Craig</u>, 449 F. Supp. at 394.

Decisions that concern towing and impoundment are uniform in requiring both notice and

a hearing to contest the application of storage and impoundment fees.  <u>See Sutton v. City of

Milwaukee</u>, 521 F. Supp. 733, 740 (E.D. Wis. 1981); <u>Hann</u>, 462 F. Supp. at 866; <u>Remm</u>, 418 F.

Supp. at 548 ("No notice or opportunity for a hearing is provided before the assessment of

towing fees and storage charges.  Individuals are deprived of a significant property interest and

no extraordinary circumstances justify the denial of due process."); <u>Graff v. Nicholl</u>, 370 F.

Supp. 974, 985 (N.D. Ill. 1974) (three-judge court).  The Ninth Circuit's decision in <u>Stypmann v.

San Francisco</u> is again instructive.  There, the court concluded that a law allowing storage fees

and a lien was invalid because it supplied no right to a hearing to challenge the imposition of the

fees.  <u>See Stypmann</u>, 557 F.2d at 1343; <u>see also Mays</u>, 503 F. Supp. at 1262-63 ("towing and

assertion of a de facto lien for towing and storage charges" is "a significant deprivation" and "an

impartial hearing must be provided at some meaningful time").  Significantly, the state law in

<u>Stypmann</u> *did* provide for a hearing prior to the ultimate auction of the vehicle – unlike here –

but the court found that this hearing did not safeguard against the deprivation that the fee and

lien powers themselves imposed.  <u>See Stypmann</u>, 557 F.2d at 1343-44; <u>see also Wright</u>, 533 F.

Supp. at 64 ("the failure to afford a hearing prior to imposing a lien for storage costs in favor of

the towing company is the constitutional violation."); <u>Craig</u>, 449 F. Supp. at 394 (plaintiffs "have

two interests at stake in these ordinances:  the impounded cars and the required charges").

**B. Village Vault Conclusively Deprived Plaintiffs of their Property Without Providing a Hearing**

A state actor must also provide procedural due process protections when it conclusively takes property.  See generally United States v. Rehlander, 666 F.3d 45, 48 (1st Cir. 2012) (in context of firearms ownership, "to work a permanent or prolonged loss of a constitutional liberty or property interest, an adjudicatory hearing, including a right to offer and test evidence if facts are in dispute, is required").  Section 129D authorizes Village Vault to auction guns to cover unpaid storage fees, but it does not provide any right to a hearing.  This runs against what the Supreme Court has described as the "fundamental requirement of due process":  "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  Matthews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).

**C. Plaintiffs' Injuries Result from the Lack of Adequate Procedural Protections**

Plaintiffs' first injury is that § 129D made them liable for storage fees, but did not provide them with prior notice or an opportunity to be heard.  Prior notice would have allowed the Plaintiffs to avoid this injury by either redeeming their property or transferring it to a qualified third party.  Plaintiffs' second injury occurred when they could not pay Village Vault's fees, and Village Vault sold the property to cover them.

However, the lack of basic due process protections also injured the Plaintiffs in ways that go beyond this.  First, Village Vault took custody of property that was not subject to seizure under § 129D in the first place.  Most of the guns (and other items) that were seized from the Jarvises belonged to Russell Jarvis and James Jarvis, Jr. – who were *not* subject to a restraining order.  Second, all three of the Plaintiffs lost items of property to Village Vault – air ("BB") guns, primitive firearms, scopes, and gun cases – that were not guns or ammunition subject to

seizure under § 129D.  Because Village Vault had no right to withhold these items from the Plaintiffs, the apparent result of a hearing would have been their immediate return.

The risk that property will be taken from "innocent" property owners – those whose property is not subject to seizure in the first place – highlights the extent of § 129D's deficiency. The decision of the Court of Appeals for the Second Circuit in Krimstock v. Kelly, 306 F.3d 40 (2d Cir. 2002), is instructive.  Krimstock concerned New York City laws that authorized officials to forfeit vehicles used in DUI offenses – and to detain those vehicles until forfeiture proceedings began.  See id. at 45.  The vehicle owners in Krimstock ultimately received a hearing – in marked contrast to the Plaintiffs here – but they often had to wait months or sometimes years for the hearing to take place.  See id.  The Second Circuit concluded that due process required the City to provide an *interim* hearing to determine whether the City ought to retain custody vis-à-vis another person with a claim to the vehicle.  See id. at 48.  The hearing must be adversarial, and it must hold the government to prove its need to retain custody of the vehicle.  See Krimstock v. Kelly, no. 99 Civ. 12041, 2007 U.S. Dist. LEXIS 82612, *2-3 (S.D.N.Y. Oct. 1, 2007); see also Ferrari v. County of Suffolk, no. 10-CV-4218, 2013 U.S. Dist. LEXI 110789, *22-23 (E.D.N.Y. Aug. 6, 2013).  A paramount concern is the risk that innocent property owners, who do not actually fall within the purview of a statute, will lose custody of their property for substantial periods of time.  See Krimstock, 306 F.3d at 56 ("In the due process context, the Supreme Court has shown special concern for the risk of erroneous deprivation posed to innocent owners."); see also County of Nassau v. Canavan, 802 N.E.2d 616, 624, 1 N.Y.3d 134, 143-44 (2003).  This same consideration that animated the Second Circuit is present here, and with substantially greater force:  Plaintiffs suffered a complete loss of their property, not a temporary deprivation, and they never received *any* hearing.  Cf. Krimstock, 306 F.3d at 56

("[t]he impact of [the law] on innocent owners is vividly illustrated by the predicament of [one] plaintiff," who was deprived of her vehicle for 10 months).  The potential for the deprivation of innocent property owners – illustrated by the facts of this case – is another factor that shows the lack of due process.

## IV) PLAINTIFFS ARE ENTITLED TO MONEY DAMAGES AND A DECLARATORY JUDGMENT

### A.  Declaratory Judgment

Plaintiffs are entitled to declaratory judgment (28 U.S.C. § 2201) that § 129D and Village Vault offend procedural due process in two different respects.  First, § 129D violates due process by making people liable for fees and subject to a lien, without providing either a hearing or adequate notice.  The statute next violates due process by allowing the conclusive deprivation of property interests, again without providing the right to a hearing.

Both of these due process issues are squarely before this Court.  See generally Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40 (1937) (declaratory judgment requires a justiciable case or controversy).  Village Vault was acting under § 129D when it asserted the right to collect fees and take liens.  There is abundant authority that Village Vault was not (and is not) entitled to collect fees that it has imposed without providing due process protections.  See Draper v. Coombs, 792 F.2d 915, 923 n.13 (9th Cir. 1986) ("As the ordinance authorizing the towing is unconstitutional, imposition of the lien was improper."); Hale v. Tyree, 491 F. Supp. 622, 626 (E.D. Tenn. 1979) ("the City must return Mr. Hale's $ 92.00 pending a hearing consistent with this opinion"); Miller v. City of Chicago, no. 82 C 1607, 1983 U.S. Dist. LEXIS 11520, *17 (N.D. Ill. Nov. 18, 1983) ("the City must reimburse all monies collected from those individuals subjected to this unconstitutional practice").  Hence, Plaintiffs are entitled to declaratory judgment that Village Vault's imposition of these fees and liens violates due process.  See, e.g.,

Tedeschi v. Blackwood, 410 F. Supp. 34, 46 (D. Conn. 1976) (three-judge court) (entering declaratory judgment that laws requiring the payment of storage fees incurred without notice or a hearing violated due process); Graff, 370 F. Supp. at 987 (same).

Village Vault was also acting under § 129D when it sold the Plaintiffs' property and used the sales proceeds to pay its fees.  It is plain that this act also violated Plaintiffs' due process rights.  See Propert, 948 F.2d at 1334-35 (destruction of plaintiff's car without adequate notice or a hearing violated due process); Assocs. Comm'l, 22 F. Supp. 2d 505-06 (car was auctioned). Again, declaratory judgment is appropriate.  See, e.g., Assocs. Comm'l, 22 F. Supp. 2d at 507 (granting declaratory judgment that divestiture of title violated due process).

### B.  Liability for Damages

Village Vault is liable for damages because it deprived Plaintiffs of property interests without providing them with procedural due process protections.  See Carey v. Piphus, 435 U.S. 247, 266-67 (1978).  In this case, the inadequate notice and the lack of a hearing caused Plaintiffs to suffer actual injuries, and Plaintiffs are entitled to damages measured on this basis.  See id. at 260.  The failure to meet the basic due process requirements of notice and a hearing presents no "qualified immunity" issue, for as the Court of Appeals for the First Circuit has observed, "[w]here persons are deprived of property interests, it has long been 'clearly established' that due process safeguards must be afforded."  Amsden v. Moran, 904 F.2d 748 (1st Cir. 1990); see also Lawrence v. Reed, 406 F.3d 1224, 1233 (10th Cir. 2005); Ginorio v. Contreras, 409 F. Supp. 2d 101, 111-12 (D.P.R. 2006); Maguire v. Old Orchard Beach, 783 F. Supp. 1475, 1483 (D. Me. 1992).  For example, in Spinelli v. City of New York, 579 F.3d 160 (2d Cir. 2009), the Second Circuit held the City of New York liable to pay damages where it had seized a gun dealer's license and firearms without providing procedural due process protections.  See id. at 175.

Plaintiffs James Jarvis, Russell Jarvis, and Robert Crampton are accordingly entitled to partial summary judgment that Village Vault is liable to them in damages in an amount to be determined in the future.  See, e.g., Spinelli, 579 F.3d at 175 (finding procedural due process violation and remanding for determination of damages); Propert, 948 F.2d at 1336 (same); see also, e.g., Ferrari, 2013 U.S. Dist. LEXI 110789 at *22-23 (finding due process violation and granting partial summary judgment of liability); Messere v. Fair, 752 F. Supp. 48, 52 (D. Mass. 1990) (same).

CONCLUSION

The lack of even basic procedural protections caused the Plaintiffs to lose their property to Village Vault.  While Plaintiffs fully support the Court's attempt to encourage Defendant Secretary Cabral to adopt regulations, it is respectfully submitted that partial summary judgment holding Defendant Village Vault liable will help facilitate the resolution of this case.

Dated: October 14, 2013

Respectfully submitted,

THE PLAINTIFFS,

By their attorneys,

Patrick M. Groulx, Esq.  
BBO No. 673394  
POLIS LEGAL  
P.O. Box 76056  
Melrose, Massachusetts 02176  
Tel:  978.549.3124  
Fax:  617.500.9955  
pgroulx@polislegal.com

David D. Jensen, Esq.  
Admitted Pro Hac Vice  
DAVID JENSEN PLLC  
111 John Street, Suite 230  
New York, New York 10038  
Tel:  212.380.6615  
Fax:  917.591.1318  
david@djensenpllc.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on 14 October 2013.

 /s/ David D. Jensen
David D. Jensen, Esq.