# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL JARVIS; JAMES JARVIS; ROBERT CRAMPTON; and COMMONWEALTH SECOND AMENDMENT, INC.,<br><br>         Plaintiffs,<br><br>   -against-<br><br>VILLAGE GUN SHOP, INC. d/b/a VILLAGE VAULT; and SECRETARY ANDREA CABRAL, in her Official Capacity as Secretary of the Executive Office of Public Safety and Security,<br><br>         Defendants. | CIVIL ACTION NO.<br>1:12-cv-40032 |

## PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Rule 56.1 and Local Rule 56.1, Plaintiffs respectfully submit that there is no dispute as to the following material facts:

1. Plaintiff James Jarvis is a sportsman and gun enthusiast who resides in Cheshire, Massachusetts.  [Declaration of James Jarvis ("J. Jarvis Dec."), filed herewith, ¶¶ 1, 3]

2. Plaintiff Russell Jarvis is a sportsman and gun enthusiast who has resided in Adams, Massachusetts at all material times.  [Declaration of Russell Jarvis ("R. Jarvis Dec."), filed herewith, ¶¶ 1, 3]

3. Plaintiff Russell Jarvis is the father of Plaintiff James Jarvis.  [J. Jarvis Dec. ¶ 2; R. Jarvis Dec. ¶ 2]

4.  Plaintiff James Jarvis holds a valid License to Carry Firearms ("LTC") issued pursuant to M.G.L. c. 140, § 131.  [J. Jarvis Dec. ¶ 6 & ex. 1]

5.  James Jarvis's LTC was suspended in July 2010, but police restored the LTC to valid status in 2011.  [J. Jarvis Dec. ¶ 7]

6.  At all material times, Plaintiff Russell Jarvis has held a valid LTC issued pursuant to M.G.L. c. 140, § 131.  [R. Jarvis Dec. ¶ 5 & ex. 1]

7.  Prior to July 2010, Plaintiff James Jarvis lived with his former wife in a home in Cheshire, Massachusetts.  [J. Jarvis Dec. ¶ 8]

8.  Plaintiff James Jarvis previously owned a collection of guns and ammunition, which he stored in locked gun cabinet in the Cheshire home.  [J. Jarvis Dec. ¶¶ 3-4, 9]

9.  Plaintiff Russell Jarvis also previously owned a collection of guns, ammunition, and accessories, which he also stored in the locked gun cabinet in Plaintiff James Jarvis's house in Cheshire.  [J. Jarvis Dec. ¶ 10; R. Jarvis Dec. ¶¶ 3-4, 6]

10. At all material times, Plaintiff Russell Jarvis has lived in Florida for part of each year.  [R. Jarvis Dec. ¶ 6]

11. Plaintiff Russell Jarvis previously stored his guns at his son James's house in order to avoid leaving his guns attended when he was absent from Massachusetts.  [J. Jarvis Dec. ¶ 10; R. Jarvis Dec. ¶ 6]

12. James Jarvis, Jr. is the adult son of Plaintiff James Jarvis and the grandson of Plaintiff Russell Jarvis.  [Declaration of James Jarvis, Jr. ("J. Jarvis Jr. Dec."), filed herewith, ¶¶ 1-2; J. Jarvis Dec. ¶ 2; R. Jarvis Dec. ¶ 2]

13. James Jarvis, Jr. currently resides in Adams, Massachusetts, but he previously resided with his parents in the Cheshire house.  [J. Jarvis Jr. Dec. ¶¶ 2-3]

14. James Jarvis, Jr. previously owned guns and ammunition, which he also stored in the locked gun cabinet in Plaintiff James Jarvis's (former) home in Cheshire.  [J. Jarvis Dec. ¶ 11; J. Jarvis Jr. Dec. ¶¶ 3-4; R. Jarvis Dec. ¶ 7]

15. James Jarvis, Jr. has assigned his claim to Plaintiff Russell Jarvis.  [J. Jarvis Jr. Dec. ¶ 10 & ex. 1; R. Jarvis Dec. ¶ 7]

16. In July 2010 Plaintiff James Jarvis separated from his former wife and moved from the Cheshire home to his father's home in Adams.  [J. Jarvis Dec. ¶¶ 8, 12; J. Jarvis Jr. Dec. ¶ 3; R. Jarvis Dec. ¶ 8]

17. At the time that Plaintiff James Jarvis moved out of the Cheshire house in July 2010, he left all of the guns and ammunition in the locked gun case in the Cheshire house, along with other items of property that he intended to retrieve later.  [J. Jarvis Dec. ¶ 12]

18. At the time that Plaintiff James Jarvis was moving out of the Cheshire house, his former wife contacted the police and reported an argument that had taken place between James and herself.  [J. Jarvis Dec. ¶ 13]

19. The former wife of James Jarvis obtained an *ex parte* temporary order of protection on (or about) July 9, 2010 pursuant to M.G.L. c. 209A, § 4.  [J. Jarvis Dec. ¶ 14]

20. Approximately one month later, in August 2010, the order of protection against Plaintiff James Jarvis was extended for one year.  [J. Jarvis Dec. ¶ 16]

21. The order of protection against Plaintiff James Jarvis expired in the year 2011. Police thereafter restored Plaintiff James Jarvis's LTC to valid status.  [J. Jarvis Dec. ¶¶ 7, 17]

22. Massachusetts State Police came to the Cheshire home on the evening of July 9, 2010 and took custody of all of the guns and ammunition from the locked gun cabinet, as well as the accessories (cases and scopes) and the air ("BB") and primitive ("black powder") weapons that had also been left in the gun cabinet.  [J. Jarvis Dec. ¶¶ 18-20; J. Jarvis Jr. Dec. ¶¶ 7-8; R. Jarvis Dec. ¶¶ 9-12]

23. State Police took custody of 3 shotguns, 4 rifles, and 1 handgun that belonged to Plaintiff James Jarvis.  [J. Jarvis Dec. ¶¶ 3-4, 18]

24. State Police took custody of 8 shotguns, 8 rifles, and 2 handguns that belonged to Plaintiff Russell Jarvis.  [R. Jarvis Dec. ¶¶ 3-4, 9]

25. State Police took custody of 3 shotguns and 1 rifle that belonged to James Jarvis, Jr.  [J. Jarvis Jr. Dec. ¶¶ 4, 8]

26. State Police took custody of a total of 30 guns, of which 8 Plaintiff James Jarvis owned 8, Plaintiff Russell Jarvis owned 18, and James Jarvis, Jr. owned 4.  [J. Jarvis Dec. ¶¶ 3-4, 18; J. Jarvis Jr. Dec. ¶¶ 4, 8; R. Jarvis Dec. ¶¶ 3-4, 9]

27. State Police took custody of 1 primitive (or "black powder") rifle that belonged to Plaintiff James Jarvis.  [J. Jarvis Dec. ¶¶ 3-4, 18-19]

28. State Police took custody of 1 "black powder" rifle (including an extra barrel) and an air-powered pistol that Plaintiff Russell Jarvis owned.  [R. Jarvis Dec. ¶¶ 3-4, 9-11]

29. State Police took custody of 1 "black powder" rifle and 1 air-powered pistol that James Jarvis, Jr. owned.  [J. Jarvis Jr. Dec. ¶¶ 4, 8]

30. State Police took custody of various accessories for the guns, including scopes, slings, and cases.  These items variously belonged to Plaintiffs James Jarvis and Russell Jarvis and to James Jarvis, Jr.  [J. Jarvis Dec. ¶¶ 18, 20-21; J. Jarvis Jr. Dec. ¶¶ 4, 8; R. Jarvis Dec. ¶¶ 9, 12-13]

31. The "black powder" rifles that State Police took custody of were not capable of firing fixed ammunition.  [J. Jarvis Dec. ¶¶ 18-19; J. Jarvis Jr. Dec. ¶¶ 4, 6, 8; R. Jarvis Dec. ¶¶ 9, 11]

32. This air-powered pistols that State Police took custody of operated on the basis of compressed air, rather than the explosion or combustion of propellants.  [J. Jarvis Jr. Dec. ¶¶ 4-5, 8; R. Jarvis Dec. ¶¶ 9-10]

33. Plaintiff James Jarvis, Plaintiff Russell Jarvis, and James Jarvis, Jr. all jointly owned and used the ammunition that State Police took into their custody.  [J. Jarvis Dec. ¶¶ 3, 18, 21; J. Jarvis Jr. Dec. ¶ 4; R. Jarvis Dec. ¶¶ 3, 9, 13]

34. State Police told James Jarvis, Jr., who was present at the time, that the seizure was standard procedure, and that the Jarvises would be able to reclaim their property in the future.  [J. Jarvis Jr. Dec. ¶ 8]

35. Plaintiff Russell Jarvis and James Jarvis, Jr. visited the Massachusetts State Police barracks in Cheshire about 3 weeks after the State Police had seized their property and told the State Police that most of the guns and other items they had seized belonged to themselves, rather than to Plaintiff James Jarvis.  [R. Jarvis Dec. ¶ 14]

36. Personnel in the State Police office told Plaintiff Russell Jarvis that the guns and ammunition would be safely returned once the order of protection had expired. [R. Jarvis Dec. ¶ 15]

37. Plaintiff Robert Crampton is 86 years old and resides in Tewksbury, Massachusetts. [Dec. of Robert Crampton ("Crampton Dec."), filed herewith, ¶ 1]

38. Plaintiff Robert Crampton previously owned a Harrington & Richardson .32 caliber revolver and two J.C. Higgins 12 gauge hunting shotguns. [Crampton Dec. ¶ 2]

39. Plaintiff Robert Crampton served in the United States Navy during World War II, and he used and carried the Harrington & Richardson revolver during his service. [Crampton Dec. ¶¶ 3-4]

40. Plaintiff Robert Crampton underwent surgery in April 2010 and was away from his home for several weeks. When he returned home, he discovered that burglars had entered his home and taken money and other valuables. [Crampton Dec. ¶ 5]

41. Plaintiff Robert Crampton contacted the Tewksbury Police Department to report the crime. Police officers with the Tewksbury Police Department learned that Plaintiff Robert Crampton owned the guns in the course of investigating the incident. [Crampton Dec. ¶¶ 6-7]

42. Plaintiff Robert Crampton had obtained an FID in the 1970s. [Crampton Dec. ¶ 8 & ex. 1]

43. The FID of Plaintiff Robert Crampton stated that its "DATE OF EXPIRATION" was "Indefinite unless revoked or suspended." [Crampton Dec. ¶ 9 & ex. 1]

44. Plaintiff Robert Crampton was not aware that Massachusetts law had changed in 1998 to provide for the expiration of FID's that previously did not expire.  Mr. Crampton lived in Florida at the time of the change, and he later moved back to Massachusetts.  [Crampton Dec. ¶¶ 10, 12-13]

45. Plaintiff Robert Crampton showed his FID card to the Tewskbury police officers. The Tewksbury police officers told Plaintiff Robert Crampton that his FID was not valid.  [Crampton Dec. ¶ 11]

46. The Tewksbury police officers took custody of Mr. Crampton's revolver and shotguns, as well as ammunition and cases for these guns, on June 2, 2010. [Crampton Dec. ¶ 14]

47. Defendant Village Vault (formally Village Gun Shop, Inc. d/b/a Village Vault) is a corporation organized under Massachusetts law with its principal place of business in Northboro, Worcester County, Massachusetts.  [Amended Complaint (Doc. No. 5) ¶ 9; Answer of Village Vault (Doc. No. 8) ¶ 9]

48. Defendant Village Vault operates a bonded warehouse pursuant to M.G.L. c. 140, § 129D in Northboro, Massachusetts.  [Amended Complaint (Doc. No. 5) ¶ 27; Answer of Village Vault (Doc. No. 8) ¶ 27]

49. Massachusetts State Police transferred the guns and other items of Plaintiff James Jarvis, Plaintiff Russell Jarvis, and James Jarvis, Jr. to Defendant Village Vault on August 11, 2010.  [Amended Complaint (Doc. No. 5) ¶ 44; Answer of Village Vault (Doc. No. 8) ¶ 44]

50. Plaintiffs James Jarvis and Russell Jarvis received no prior notice and were unaware that the State Police would transfer their guns and other items to Defendant Village Vault.  [J. Jarvis Dec. ¶¶ 22-23; R. Jarvis Dec. ¶¶ 18-20]

51. Plaintiff James Jarvis and Russell Jarvis would have objected to the transfer to Defendant Village Vault, had they known about it, and they would have pursued other options, such as transferring their guns to a friend or third party, proposing a different "bonded warehouse," and attempting to negotiate their own terms with the "bonded warehouse" that the State Police had selected.  [J. Jarvis Dec. ¶ 24; R. Jarvis Dec. ¶ 21]

52. Plaintiff James Jarvis and Russell Jarvis received their first written notice from Defendant Village Vault on August 18, 2010.  [J. Jarvis Dec. ¶ 22 & ex. 2; R. Jarvis Dec. ¶¶ 18-20 & ex. 2]

53. The Tewksbury Police Department transferred the revolver, shotguns, ammunition, and cases of Plaintiff Robert Crampton to Defendant Village Vault on November 15, 2010.  [Amended Complaint (Doc. No. 5) ¶ 56; Answer of Village Vault (Doc. No. 8) ¶ 56]

54. Plaintiff Robert Crampton received no prior notice and was unaware that the Tewksbury Police would transfer his guns and other items to Defendant Village Vault.  [Crampton Dec. ¶¶ 15-16, 18 & ex. 2]

55. Plaintiff Robert Crampton would have objected to the transfer to Defendant Village Vault, had he known about it, and he would have pursued other options, such as transferring the guns to a friend or third party, proposing a different

"bonded warehouse," and attempting to negotiate his own terms with the "bonded warehouse" that the Tewksbury Police had selected.  [Crampton Dec. ¶ 19]

56. Plaintiff Robert Crampton received his first written notice from Defendant Village Vault on November 18, 2010.  [R. Crampton Dec. ¶¶ 15-16, 18 & ex. 2]

57. Defendant Village Vault imposed, and imposes, up-front fees of $45 for "administration" and $15, per item, for "handling."  [Amended Complaint (Doc. No. 5) ¶¶ 28, 45; Answer of Village Vault (Doc. No. 8) ¶¶ 28, 45, 57]

58. Defendant Village Vault imposed, and imposes, a daily storage fee of $0.50 per item, per day.  [Amended Complaint (Doc. No. 5) ¶¶ 28, 57; Answer of Village Vault (Doc. No. 8) ¶¶ 28, 57]

59. Village Vault logged the Jarvises' guns, ammunition, and accessories as 34 "items," of which 27 were recorded as guns.  [Amended Complaint (Doc. No. 5) ¶¶ 45-46; Answer of Village Vault (Doc. No. 8) ¶¶ 45-46]

60. Village Vault logged Robert Crampton's guns and other property as 3 "items." [Amended Complaint (Doc. No. 5) ¶ 57; Answer of Village Vault (Doc. No. 8) ¶ 57]

61. Plaintiff Russell Jarvis called Defendant Village Vault on August 18, 2010, after receiving Village Vault's letter.  [R. Jarvis Dec. ¶ 24]

62. Defendant Village Vault told Plaintiff Russell Jarvis that, in addition to its other fees, he would need to pay a $20.00 per-gun "registration" fee to "transfer" the guns to a third party.  [R. Jarvis Dec. ¶ 24; see also Amended Complaint (Doc. No. 5) ¶¶ 28, 45, 57; Answer of Village Vault (Doc. No. 8) ¶¶ 28, 45, 57]

63. Defendant Village Vault also told Plaintiff Russell Jarvis that he would need to pay the additional $20.00 per-gun "registration" fee to "transfer" the guns to himself, since the State Police paperwork identified James Jarvis as the only owner.  [R. Jarvis Dec. ¶ 24; see also Amended Complaint (Doc. No. 5) ¶¶ 28, 45, 57; Answer of Village Vault (Doc. No. 8) ¶¶ 28, 45, 57]

64. As of August 18, 2010 Plaintiffs Russell and James Jarvis would have needed to pay $1,231 consisting of the $45 "administration" fee, $510 in "handling" fees (34 items x $15), $136 in "storage" fees (8 days x $0.50 x 34 items), and $540 in "registration" fees (27 guns x $20) in order to redeem their property from Defendant Village Vault.  [See R. Jarvis Dec. ¶ 24; Amended Complaint (Doc. No. 5) ¶¶ 28, 45-46, 57; Answer of Village Vault (Doc. No. 8) ¶¶ 28, 45-46, 57; see also J. Jarvis Dec. ¶¶ 22, 33 & ex. 2-3; R. Jarvis Dec. ¶¶ 18-19, 26 & ex. 2-3]

65. Plaintiff Robert Crampton called Defendant Village Vault on November 18, 2010, after receiving Village Vault's letter.  [Crampton Dec. ¶ 20]

66. Plaintiff Robert Crampton is confined to a wheelchair, and in light of this, and also his advanced age, did not wish to retake possession of his guns.  However, Mr. Crampton did want to transfer the guns to a relative so that they could be passed down to a grandson at an appropriate time in the future.  [Crampton Dec. ¶ 21]

67. As of November 18, 2010 Plaintiff Robert Crampton would have needed to pay $156 in order to transfer his property from Defendant Village Vault to a qualified friend or relative, consisting of the $45 "administration" fee, $45 in "handling" fees (3 items x $15), $6 in "storage" fees (4 x $0.50 x 3 items), and $60 in "registration" fees (3 guns x $20).  [See Amended Complaint (Doc. No. 5) ¶¶ 28,

45, 61, 57; Answer of Village Vault (Doc. No. 8) ¶¶ 28, 45, 57; <u>see also</u> Crampton Dec. ¶¶ 15-16 & ex. 2]

68. In early 2011, James Jarvis contacted a licensed gun dealer in Pittsfield that had provided "bonded warehouse" services in the past.  [J. Jarvis Dec. ¶ 31]

69. The store offered to store the guns for about $30 per month.  [J. Jarvis Dec. ¶ 31]

70. However, the Jarvises still could not afford to pay the fees that Village Vault required to "transfer" and release the guns.  [J. Jarvis Dec. ¶ 31]

71. James Jarvis then spoke with a second licensed gun dealer that could provide "bonded warehouse" services.  [J. Jarvis Dec. ¶ 32]

72. The owner of this store agreed, as a favor, to pay Village Vault's fees, and to then sell some of the guns in order to cover the fees.  [J. Jarvis Dec. ¶ 32]

73. However, upon learning that Village Vault required payment of approximately $2,700 to transfer and release the guns, the store owner advised that it would likely not be profitable to sell the guns at auction.  [J. Jarvis Dec. ¶ 32]

74. Plaintiff James Jarvis could not afford to transfer his guns and other property to a third party.  At the time, he was going through a divorce, and legal fees and related costs had consumed his financial resources.  [J. Jarvis Dec. ¶ 30]

75. Plaintiff Russell Jarvis could not afford to redeem or transfer his guns and other property.  Russell Jarvis was, and is, retired.  [R. Jarvis Dec. ¶ 25]

76. Plaintiff Robert Crampton could not afford to transfer his guns to a third party.  Mr. Crampton was (and is) retired and on a fixed income, and he had just lost the cash savings he had in his house.  [Crampton Dec. ¶ 22]

77. Defendant Village Vault sent invoices to Plaintiff James Jarvis from September 2010 ($1,065) through April 2011 ($4,550).  [J. Jarvis Dec. ¶ 33 & ex. 3; R. Jarvis Dec. ¶ 26 & ex. 3; Amended Complaint (Doc. No. 5) ¶ 46; Answer of Village Vault (Doc. No. 8) ¶ 46]

78. Defendant Village Vault auctioned the guns and other property of Plaintiffs Russell and James Jarvis and James Jarvis, Jr. on July 26 and August 30, 2011 for the sum of $2,695.  [J. Jarvis Dec. ¶ 34 & ex. 4; R. Jarvis Dec. ¶ 27 & ex. 4; Amended Complaint (Doc. No. 5) ¶ 49; Answer of Village Vault (Doc. No. 8) ¶ 49]

79. Defendant Village Vault claims it is entitled to total storage and related fees of $5,634.25 from Plaintiff James Jarvis (or $2,939.25 after deducting the auction proceeds).  [J. Jarvis Dec. ¶ 34 & ex. 4; R. Jarvis Dec. ¶ 27 & ex. 4; Amended Complaint (Doc. No. 5) ¶ 49; Answer of Village Vault (Doc. No. 8) ¶ 49]

80. Defendant Village Vault auctioned the Plaintiff Robert Crampton's 3 guns and other property on September 24 and November 19, 2011 for the sum of $185. [Crampton Dec. ¶ 24 & ex. 3; Amended Complaint (Doc. No. 5) ¶ 59; Answer of Village Vault (Doc. No. 8) ¶ 59]

81. Defendant Village Vault claims it is entitled to total storage and related fees of $586 from Plaintiff Robert Crampton (or $401 after deducting the auction proceeds).  [Crampton Dec. ¶ 24 & ex. 3; Amended Complaint (Doc. No. 5) ¶ 59; Answer of Village Vault (Doc. No. 8) ¶ 59]

82. Plaintiff James Jarvis never received any notice that he had the opportunity for a hearing to challenge the fees imposed by Village Vault or the validity of Village Vault's ongoing possession of his property.  [J. Jarvis Dec. ¶ 35]

83. Plaintiff Russell Jarvis never received any notice that he had the opportunity for a hearing to challenge the fees imposed by Village Vault or the validity of Village Vault's ongoing possession of his property.  [R. Jarvis Dec. ¶ 28]

84. Plaintiff Robert Crampton never received any notice that he had the opportunity for a hearing to challenge the fees imposed by Village Vault or the validity of Village Vault's ongoing possession of his property.  [Crampton Dec. ¶ 25]


Dated: October 14, 2013

Respectfully submitted,

THE PLAINTIFFS,

By their attorneys,


Patrick M. Groulx, Esq.    David D. Jensen, Esq.
BBO No. 673394      Admitted *Pro Hac Vice*
POLIS LEGAL       DAVID JENSEN PLLC
P.O. Box 76056       111 John Street, Suite 230
Melrose, Massachusetts 02176  New York, New York 10038
Tel:  978.549.3124      Tel:  212.380.6615
Fax:  617.500.9955     Fax:  917.591.1318
pgroulx@polislegal.com    david@djensenpllc.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on 14 October 2013.

 /s/ David D. Jensen
David D. Jensen, Esq.