# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL JARVIS; JAMES JARVIS; ROBERT CRAMPTON; and COMMONWEALTH SECOND AMENDMENT, INC.,<br><br>      Plaintiffs,<br><br>  -against-<br><br>VILLAGE GUN SHOP, INC. d/b/a VILLAGE VAULT; and SECRETARY MARY E. HEFFERNAN, in her Official Capacity as Secretary of the Executive Office of Public Safety and Security,<br><br>      Defendants. | CIVIL ACTION NO. 1:12-cv-40032 |

## DECLARATION OF RUSSELL JARVIS

I, Russell Jarvis, declare as follows:

1. I am a Plaintiff in the above-captioned action. I reside in Adams, Massachusetts. I am 74 years of age, and I have been married for 48 years. I am competent to testify on my own behalf.

2. I am the father of James Jarvis, who is also a Plaintiff in this action. James Jarvis, Jr., who is not a Plaintiff, is James Jarvis's son and my grandson.

3. My hobbies include hunting, shooting, and firearms. I previously owned 8 shotguns, 8 rifles, 2 handguns, a .50 caliber primitive (or "black powder") rifle, ammunition, and an air pistol, which I stored in a locked gun cabinet at the (former) home of my son, Plaintiff James Jarvis, in Cheshire, Massachusetts.

4. Specifically, I owned and stored the following guns and other items at the Cheshire house:

    i. Davis 12 gauge double-barrel shotgun, serial no. B6820;

    ii. Mossberg 20 gauge shotgun, model 185D, no serial number;

    iii. Stevens .22 caliber rifle, model Visload, serial no. E449;

    iv. Winchester .22 caliber rifle, model 275, serial no. 113253;

    v. Iver Johnson 20 gauge double-barrel shotgun, no serial number;

    vi. J.C. Higgins 12 gauge shotgun, model 20, no serial number;

    vii. Stevens .22 caliber rifle, model 87D, no serial number;

    viii. Davenport 12 gauge shotgun, model 1855, serial no. 8;

    ix. Mossberg .22 caliber rifle, model 642K, no serial number;

    x. Lee-Enfield .303 caliber rifle, "sporter" model, serial no. AX16827;

    xi. Winchester .32 caliber rifle, model 1894, serial no. 3244086;

    xii. Stevens .410 "gauge" shotgun, model 58C, serial no. A362181;

    xiii. Ithaca 12 gauge shotgun, model 37, serial no. 371312735 (with scope);

    xiv. Colt .22 caliber revolver, Buntline Scout model, serial no. 131382F;

    xv. Iver Johnson .38 caliber revolver, top-break model, no serial number;

    xvi. Harrington & Richardson 12 gauge shotgun, Huntsman model, serial no. AS244122;

    xvii. Sheriden 5mm caliber air pistol, model Blue Streak, no serial number;

    xviii. Thompson-Center primitive ("black powder") rifle with 2 barrels bearing the serial nos. 64854 and 110793;

    xix. Martin .22 caliber semi-automatic, tube-fed rifle; and

    xx. Stevens .22 bolt action rifle.

-3-

5. I currently hold a valid License to Carry Firearms ("LTC") issued pursuant to M.G.L. c. 140, § 131. I have held a valid LTC since the 1960s. A copy of my LTC is attached as Exhibit 1.

6. For the past several years, I have lived in Florida for part of each year. The reason that I stored my guns at James's house was to avoid leaving them unattended during times that I was absent from Massachusetts.

7. My grandson James Jarvis, Jr. also stored guns and ammunition in the locked gun cabinet. He has assigned his claim to me.

8. My son James separated from his wife in June 2010 and moved to our house in Adams.

9. I understand that Massachusetts State Police came to James's former home in Cheshire on the evening of July 9, 2010 and took custody of all of the guns and ammunition from the locked gun cabinet (including those listed above), as well as accessories such as cases and scopes.

10. State Police also took custody of a Sheriden 5mm caliber "Blue Streak" model air pistol that belonged to me. This air pistol operated on the basis of compressed air, and not on the basis of the explosion or combustion of propellants. It did not have a serial number.

11. State Police also took custody of a Thompson-Center .50 caliber black powder (*i.e.* primitive) rifle that I owned. This black powder rifle was not capable of firing fixed ammunition. This rifle included one extra barrel.

12. State Police also took custody of various accessories for the guns, including scopes, slings, and cases. These items belonged to me, and also to my son James and my grandson James Jr.

13. I jointly owned and used the ammunition along with my son James and my grandson James Jr.

14. About three weeks after State Police took custody of the guns, I traveled to the State Police barracks in Cheshire and requested the return of the guns and other property. My grandson James Jr. came with me. I told them that some of the guns and other items that they had seized belonged to both myself and to James Jr., rather than to James. I asked them to return the property.

15. Personnel in the State Police office told me that the guns and other items would be safely returned once the order of protection had expired.

16. I understood that State Police had to hold their guns and could not charge me fees to obtain their return.

17. After this visit to the State Police barracks, I contacted Pete's Gun Shop in Adams to see if they could take custody of the guns from the State Police. I knew that Pete's Gun Shop had previously provided storage services for the police. When I visited the store the manager, Tom Decker, was on vacation. I was told to return and discuss the matter with him after he returned home.

18. On August 18, 2010 we received a certified letter from a company called "Village Vault" that was addressed to my son James. A true and accurate (redacted) copy of this letter is attached as Exhibit 2. We received this letter after I had visited the State Police barracks and Pete's Gun Shop, but before Mr. Decker returned home.

19. The letter attached as Exhibit 2 notified me that Village Vault had custody of my guns and other property, and that the company was charging me fees.

20. I was totally unaware that Village Vault or any other such company might take custody of my guns and other property and charge me fees before we received the letter attached as Exhibit 2.

21. If I had known in advance, I would have objected to the transfer to Village Vault, and I would have pursued other options, such as taking more steps to redeem the guns from the State Police barracks, taking more steps to transfer the guns to a friend or third party, proposing a different "bonded warehouse," or attempting to negotiate my own terms with Village Vault.

22. I have reviewed the list of guns included with Exhibit 2 and I note that there is an apparent mistake for entry numbers 30 and 31.  I owned a Thompson-Center .50 caliber black powder rifle with an extra barrel, which is apparently listed as entry number 30. However, entry number 30 inaccurately lists a third barrel for this gun.  I located paperwork from my original purchase of this rifle and determined that the serial numbers for my gun and extra barrel were 64854 and 110793.  It appears that the barrel for my son James's .54 caliber Thompson-Center black powder rifle (no. 59835) was mistakenly listed as being a part of my .50 caliber rifle.

23. Another apparent mistake in the list attached as Exhibit 2 is that it does not include two .22 caliber rifles that I had stored in the Cheshire gun cabinet:  the Martin .22 semi-automatic and the Stevens .22 bolt action listed in the above paragraph 4(xix)-(xx).

24. I contacted Village Vault by telephone immediately after my son James received the letter, and I asked about the fees that would be needed to redeem possession

of the guns. Personnel at Village Vault told me that I would need to pay $1,500 to redeem the guns. This included a number of "transfer" fees that they said would be needed to "transfer" the guns from James to myself. I told Village Vault that most of the guns and other items did not belong to James in the first place, and that Village Vault had no right to withhold this property. I also told Village Vault that the three "black powder" guns and the two "BB" guns were not subject to seizure under the law. Village Vault told me that it refused to release any of the property without the payment of its claimed fees.

25. I could not afford to pay these fees, and so I was not able to redeem the guns and other items, or to transfer them to another person. I was (and am) retired and live on a fixed income.

26. Village Vault sent invoices to my son James from September 2010 ($1,065) through April 2011 ($4,550). Copies of invoices are attached as Exhibit 3.

27. We later received correspondence that Village Vault had auctioned the guns and other property on May 21, 2011 and September 24, 2011 for the sum of $2,695. A copy of this correspondence is attached as Exhibit 4.

28. I never received any notice that I had the opportunity for a hearing to challenge the fees imposed by Village Vault or the validity of Village Vault's ongoing possession of my property.

I affirm all of the foregoing statements under penalty of perjury under the laws of the United States of America.

Dated: May 20 2013

*Russell Jarvis*
Russell Jarvis