UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL JARVIS; JAMES JARVIS; ROBERT CRAMPTON; and COMMONWEALTH SECOND AMENDMENT, INC.,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　　-against-<br><br>VILLAGE GUN SHOP, INC. d/b/a VILLAGE VAULT; and SECRETARY MARY E. HEFFERNAN, in her Official Capacity as Secretary of the Executive Office of Public Safety and Security,<br><br>　　　　　　　　　　Defendants. | CIVIL ACTION NO.<br>1:12-cv-40032 |

## DECLARATION OF ROBERT CRAMPTON

I, Robert Crampton, declare as follows:

1. I live in Tewksbury, Massachusetts. I am 85 years of age and am a widower. I am competent to testify on my own behalf.

2. I previously owned a Harrington & Richardson "Young America" model .32 caliber revolver and two J.C. Higgins 12 gauge hunting shotguns, as well as ammunition and cases for these guns.

3. I served in the United States Navy during World War II as a seaman. I was stationed in Italy, among other places.

4. I purchased the revolver prior to my deployment in World War II, and I took this gun with me and carried it while I was stationed in Europe.

5. I underwent inpatient surgery in April 2010 and was away from my home for several weeks. When I returned home, I discovered that someone had entered my home and taken some money and other valuables (although my guns were not taken).

6. I contacted the Tewksbury Police Department to report this apparent theft.

7. The Tewksbury police officers learned that I owned the shotguns and the revolver. I voluntarily told the officers that I owned these items.

8. I obtained a Firearms Identification Card ("FID") from Somerville, Massachusetts police authorities in the early 1970s. This FID bears the number 319236. A true and correct (redacted) copy of this FID is attached to this Declaration as Exhibit 1.

9. My FID stated that its "DATE OF EXPIRATION" was "Indefinite unless revoked or suspended."

10. I lived in Florida during the late 1990s, prior to my wife's passing. I thereafter moved back to Massachusetts.

11. When I showed the Tewksbury police officers my FID, they told me that the FID was no longer valid.

12. At the time I showed the Tewksbury police officers my FID, I thought that the FID still entitled me to possess my guns and ammunition.

13. I later learned that the Commonwealth of Massachusetts had apparently changed the FID law in 1998 so as to eliminate "Indefinite" FIDs.

14. Tewksbury police officers took custody of my revolver, shotguns, ammunition, and cases on June 2, 2010.

15. On November 18, 2010 I received a certified letter from a company called "Village Vault." A true and accurate (redacted) copy of this letter is attached as Exhibit 2.

16.     The letter attached as Exhibit 2 notified me that Village Vault had custody of my guns and other property, and that the company was charging me fees.

17.     The second page of the letter attached as Exhibit 2 describes my two J.C. Higgins shotguns, my revolver, my cases, and my ammunition (although there are some slight inaccuracies, notably the misstatement that "Young American" was the manufacturer of the revolver, when in fact, "Young America" was the model).

18.     I was totally unaware that Village Vault or any other such company might take custody of my guns and other property and charge me fees before I received the letter attached as Exhibit 2.

19.     If I had known that my property would be transferred to Village Vault, I would have pursued other options, such as transferring the guns to a friend or third party, proposing a different company to store the guns, or attempting to negotiate my own terms with Village Vault.

20.     I called Village Vault on November 18, 2010, the same day I received the letter attached as Exhibit 2, at the phone number stated on the letter.  Someone at this phone number told me that I would need to pay fees in order to obtain the return of my guns and other items.

21.     I am confined to a wheelchair, and in light of this (as well as my age), I did not wish to retake possession of my guns.  However, I did want to transfer these guns to a relative so that they could be passed down to a grandson at an appropriate time in the future.

22.     I could not afford to pay Village Vault's fees and transfer my guns and other property to a third party.  I was and am retired, and I live on a fixed income.  Moreover, at this time I had just lost the cash savings I had in my house.

23.     I recall that I called Village Vault a couple additional times over the next several months.  Each time, the amount of fees that Village Vault said I needed to pay increased.

24.     I received a letter from Village Vault in late December 2010 or early January 2011 notifying me that the company had auctioned my guns. A true and correct (redacted) copy of this letter is attached to this Declaration as Exhibit 3.

25.     I never received any notice that I had the opportunity for a hearing to challenge the fees imposed by Village Vault or the validity of Village Vault's ongoing possession of my guns and other property.

> I affirm all of the foregoing statements under penalty of perjury under the laws of the United States of America.

Dated: March 2, 2013

Robert Crampton