# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL JARVIS; JAMES JARVIS; ROBERT CRAMPTON; and COMMONWEALTH SECOND AMENDMENT, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> VILLAGE GUN SHOP, INC. d/b/a VILLAGE VAULT; and SECRETARY ANDREA CABRAL, in her Official Capacity as Secretary of the Executive Office of Public Safety and Security, <br><br> Defendants. | CIVIL ACTION NO. 1:12-cv-40032 |

## PLAINTIFFS' REPLY IN SUPPORT OF PARTIAL SUMMARY JUDGMENT AGAINST VILLAGE GUN SHOP, INC.

David D. Jensen, Esq.
Admitted *Pro Hac Vice*
NYS Bar No. 4234449
DAVID JENSEN PLLC
111 John Street, Suite 420
New York, New York 10038
(212) 380-6615 tel
(917) 591-1318 fax
david@djensenpllc.com

Patrick M. Groulx, Esq.
BBO No. 673394
Donahue, Grolman & Earle
321 Columbus Avenue
Boston, Massachusetts 02116
(617) 859-8966 tel
(617) 859-8903 fax
patrick@d-and-g.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**INTRODUCTION** ............................................................................................................... 1

**UNDISPUTED MATERIAL FACTS** ............................................................................................. 1

**REPLY** ............................................................................................................................ 4

    I)   VILLAGE VAULT IS A STATE ACTOR BECAUSE IT ACTED AT THE BEHEST OF POLICE WHO HAD SEIZED PLAINTIFFS' PROPERTY ............................................................. 4

    II)  PLAINTIFFS HAD PROPERTY INTERESTS IN THEIR CHATTELS AND MONEY .................... 9

    III) THE SECRETARY'S APPEAL TO "CONSTRUCTIVE NOTICE" IS BASELESS ...................... 12

    IV) DEFENDANTS' REMAINING ARGUMENTS ARE MERITLESS ............................................ 14

**CONCLUSION** ..................................................................................................................... 15

**TABLE OF AUTHORITIES**

**CASES**

Addante v. Village of Elmwood Park, 541 F. Supp. 497 (N.D. Ill. 1982) .................................... 8

Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40 (1999) .............................................................. 6

Assocs. Comm'l Corp. v. Wood, 22 F. Supp. 2d 502 (D. Md. 1998) ......................................... 8, 9

Belcher v. Norton, 497 F.3d 742 (7th Cir. 2007) ........................................................................... 9

Blum v. Yaretsky, 457 U.S. 991 (1982) .......................................................................................... 6

Board of Regents v. Roth, 408 U.S. 564 (1972) .......................................................................... 10

Brentwood Academy v. Tennesee Secondary School Athletic Ass'n, 531 U.S. 288 (2001) ......... 8

Chmielinski v. Com. of Mass. Ofc. of the Comm'r of Probation, 513 F.3d 309
   (1st Cir. 2008) ........................................................................................................................ 15

Clukey v. Camden, 717 F.3d 52 (1st Cir. 2013) .......................................................................... 10

Coleman v. Turpen, 697 F.2d 1341 (10th Cir. 1982) ................................................................. 8, 9

Craig v. Carson, 449 F. Supp. 385 (M.D. Fla. 1978) .................................................................... 9

Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1 (1st Cir. 2005) ................... 6, 8

Flagg Bros., Inc. v. Brooks, 436 U.S. 149 (1978) ......................................................................... 7

Gilbert v. Homar, 520 U.S. 924 (1997) ....................................................................................... 12

Goichman v. Rheuban Motors, Inc., 682 F.2d 1320 (9th Cir. 1982) .......................................... 5, 8

Goldberg v. Kelly, 397 U.S. 254 (1970) ...................................................................................... 15

Grapentine v. Pawtucket Credit Union, 755 F.3d 29 (1st Cir. 2014) ............................................ 7

Griffin v. Griffin, 327 U.S. 220 (1946) ........................................................................................ 15

Hann v. Carson, 462 F. Supp. 854 (M.D. Fla. 1978) .................................................................... 8

Hightower v. Boston, 693 F.3d 61 (1st Cir. 2012) ...................................................................... 12

ICG Petroleum, Inc. v. U.S. Dep't of Energy, 883 F.2d 80
   (Temp. Emg'y Ct. App. 1989) ........................................................................................... 13-14

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) .................................................................... 2

Matthews v. Eldridge, 424 U.S. 319 (1976) ................................................................................ 15

Mays v. Scranton City Police Dep't, 503 F. Supp. 1255 (M.D. Penn. 1980) ............................ 8, 9

Mead v. Independence Ass'n, 684 F.3d 226 (1st Cir. 2012) .......................................................... 7

Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983) ....................................................... 13

Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306 (1950) ............................................... 13

Penney v. First Nat'l Bank of Boston, 433 N.E.2d 901 (Mass. 1982) .......................................... 7

Propert v. District of Columbia, 948 F.2d 1327 (D.C. Cir. 1991) ................................................ 9

Remm v. Landrieu, 418 F. Supp. 542 (E.D. La. 1976) ................................................................ 9

Rendell-Baker v. Kohn, 457 U.S. 830 (1982) ............................................................................ 6-7

San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee, 483 U.S. 522 (1987) ........... 6-7

San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 650 F.3d 826 (1st Cir. 2011) .................... 15

Sandia v. Rivera, 46 P.3d 108, 132 N.M. 201 (2002) ................................................................... 9

Smith v. Insley's Inc., 499 F.3d 875 (8th Cir. 2007) ..................................................................... 8

Spinelli v. City of New York, 579 F.3d 160 (2d Cir. 2009) ......................................................... 12

Stypmann v. City and County of San Francisco, 557 F.2d 1338 (9th Cir. 1977) .......................... 8

Tedeschi v. Blackwood, 410 F. Supp. 34 (D. Conn. 1976) ........................................................... 8

United States v. DeBartolo, 482 F.2d 312 (1st Cir. 1973) .......................................................... 13

United States v. James Daniel Good Real Prop., 510 U.S. 43 (1993) ........................................ 15

Weinrauch v. Park City, 635 F. Supp. 91 (D. Utah 1988) ............................................................ 8

Wright v. City of Reno, 533 F. Supp. 58 (D. Nev. 1981) ........................................................... 8, 9

**STATUTES**

M.G.L. c. 140, § 129D ........................................................................................................ 1, 9, 11

M.G.L. c. 140, § 131 ............................................................................................................. 11, 14

**RULES**

Fed. R. Civ. P. 56 ........................................................................................................................... 2

## INTRODUCTION

Defendant Village Vault took the Plaintiffs' property at the behest of police officers who had seized that property in exercises of police power. The Plaintiffs never made any contract with Village Vault, and they would have never been subjected to Village Vault's fees and lien if the police had not taken custody of their property in the first place. Village Vault then deprived the Plaintiffs by asserting a claim for money and a lien, and ultimately by taking title to the property, but without ever providing prior notice, a hearing, or notice of the right to a hearing. It has no defense.

Belying this, both Village Vault and Secretary Cabral attempt to ignore the showing that Plaintiffs made in their moving papers – and instead, to distract attention with a plethora of inapplicable arguments and defenses. The attempt fails.

## UNDISPUTED MATERIAL FACTS

The following facts are undisputed:

- Police officers seized and took custody of the Plaintiffs' guns, ammunition, and other property. Plfs. Stmt.[1] ¶¶ 22-30, 46.

- Following this seizure, state law required the police to hold the Plaintiffs' property for a period of one year. It allowed, but did not require, police to transfer the property to a private company such as Village Vault after at least two days had passed since the initial seizure. M.G.L. c. 140, § 129D.

- At the request of the police, Village Vault took custody of the Plaintiffs' property between one and four months after the police had originally taken custody of it from the Plaintiffs. Plfs. Stmt. ¶¶ 22, 46, 49, 53.

- After (and only after) taking custody of the Plaintiffs' property, Defendant Village Vault notified the Plaintiffs that they would need to pay fees that it had imposed in order to obtain the return of their property, or alternatively, in order to transfer that property to a third party. Plfs. Stmt. ¶¶ 50, 52, 54, 56.

- From the moment that Plaintiffs first learned that Village Vault had custody of their property and was imposing fees, the fees that Village Vault required to release the

---

[1] Plaintiffs' Statement of Undisputed Material Facts (Doc. No. 34).

> property already constituted between 46% (Russell and James Jarvis) and 84% (Robert Crampton) of the value that was ultimately obtained for the property at auction. Plfs. Stmt. ¶¶ 64, 67, 78, 80.

- Neither Village Vault nor any other party provided the Plaintiffs with any notice before Village Vault took custody of their property and imposed its fees and lien. Plfs. Stmt. ¶¶ 50, 54.

- All of the Plaintiffs would have transferred their property to third parties (such as friends or relatives) if they had known that Village Vault was going to take custody of their guns and impose fees. Plfs. Stmt. ¶¶ 51, 55.

- Even if the Plaintiffs had elected to use a commercial storage facility, they could have obtained much lower storage rates than the rates that Village Vault imposed on them. Russell and James Jarvis were able to locate a licensed gun shop that would have charged them only about $30 a month to store their guns. Village Vault, in contrast, charged $510 per month (30 days x $0.50 x 34 items) for storage alone (in addition to the $1,095 in other fees that it claimed). Plfs. Stmt. ¶¶ 57, 62, 64, 68-69.

- No hearing is provided to contest Village Vault's custody of property or the fees and terms that it imposes. Plfs. Stmt. ¶¶ 82-84.

- Some of the seized items (such as cases, "air" guns, and "black powder" guns) were not subject to seizure or storage under the statute in the first place and – other issues aside – a hearing would have resulted in the return of these items to the Plaintiffs. Plfs. Stmt. ¶¶ 30-32, 46; Plaintiffs' Br. p. 4.

Defendants either do not dispute these facts or else claim that they have insufficient knowledge to respond to them. Of course, this claim of ignorance is insufficient to avoid summary judgment, for "[i]n response to a summary judgment motion, . . . [a party] can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts[.]" Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). In order to dispute facts established in Plaintiffs' moving papers, Defendants would have needed to "cit[e] to particular parts of materials in the records" or "show that the materials cited [by Plaintiffs] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Moreover, even setting these well established principles aside, the fact is that Defendants requested and were allowed to take discovery *after* Plaintiffs had already moved for summary judgment and placed *all* of these facts

before Defendants.  See Order (Doc. No. 53); Stipulation Regarding Discovery (Doc. No. 51); Order (Doc. No. 50); Motion to Defer Motion for Discovery (Doc. No. 41).  Defendants cannot now claim that they lacked the opportunity to investigate these facts.

Three of Defendants factual contentions merit response here.  The first is the Secretary's claim that Plaintiffs Russell and James Jarvis "[we]re aware of the state laws governing gun use and possession," which suggests that Plaintiffs conceded some intricate level of knowledge of all the fine points and details of Massachusetts firearms laws.  In reality, both Russell and James testified that they had a "general" understanding of Massachusetts gun laws, such as the requirement of having a license, but not an intricate knowledge of the law's myriad details.  See Plaintiffs' Response to Defendant Cabral's Counter-Statement of Facts ¶ 15.

The second is Village Vault's claim (at page 4 of its first brief) that "Plaintiffs had an opportunity . . . to limit the storage fee costs . . . merely by making arrangements with a properly licensed individual or firearms dealer to make a transfer of or sale of their property."  This blinks reality.  From the moment that Plaintiffs first learned that Village Vault had taken their property and was demanding fees, the Plaintiffs would have needed to pay half (or more!) of the value that Village Vault ultimately realized at auction just to obtain its return.  Plfs. Stmt. ¶¶ 64, 67, 78, 80.  Even if the Plaintiffs could have afforded to pay these fees, a substantial degree of deprivation had already occurred before the Plaintiffs received notice.

Finally, the Secretary's claim that none of the Plaintiffs asked the police departments to transfer their party to *particular* third persons (pp. 6-7) also blinks reality.  The Plaintiffs had no reason to transfer their guns because the police departments were holding them without charge. Moreover, this contention disregards the fact that each of the Plaintiffs *would* have found someone to hold their guns if they had they received prior notice.  Plfs. Stmt. ¶¶ 51, 55.

# REPLY

## I) VILLAGE VAULT IS A STATE ACTOR BECAUSE IT ACTED AT THE BEHEST OF POLICE WHO HAD SEIZED PLAINTIFFS' PROPERTY

Plaintiffs showed in their moving papers that Village Vault is liable as a state actor under the "nexus/joint action" test because:

- Village Vault acted at the behest of police departments, who requested that Village Vault perform services. Plaintiffs' Br. p. 9.

- Village Vault's actions all occurred in direct consequence of the state's exercise of coercive power – specifically, the seizure of guns by police. Id. pp. 9-10.

- Village Vault's actions served to relieve the police of the duty they otherwise had to store the Plaintiffs' property for one year. Id. p. 10.

Plaintiffs further showed that in the analogous context of vehicle impoundment and storage, courts have repeatedly held private storage companies liable as state actors when they act both pursuant to law and at the request of police officers – factors that are plainly present here. Plaintiffs cited no less than 11 decisions to support this proposition. See id. pp. 10-11.

Defendants do not dispute the basic facts that lead to the conclusion that Village Vault is liable. Quite to the contrary, Village Vault *emphasizes*:

- that its involvement "begins" with the Plaintiffs' forced surrender of their property to the police (p. 1);

- that Village Vault "took action in response to the state and local police departments taking custody of the firearms and ammunition of" the Plaintiffs (p. 2);

- that "[c]ustody of the firearms, weapons and ammunition was transferred from the police to Village Vault pursuant to the Statute" (p. 3); and

- that "the police departments and Village Vault . . . acted" together in a manner that Village Vault asserts was "in accordance with and in compliance with the procedures and requirements of the Statute" (p. 3).

Defendants ignore the 11 cases that Plaintiffs cited almost entirely and attempt to respond to only one of them. According to the Secretary (p. 16), Goichman v. Rheuban Motors, Inc., 682

F.2d 1320 (9th Cir. 1982), shows that impound companies working at the request of police departments are liable as state actors only when "the car is stored and kept as security for payment of the parking violations and overdue fines owed to the governmental agency." The Secretary then contends that Village Vault – which requires property owners to pay its unilaterally imposed fees in order to obtain their property back – is in contrast acting "to protect the owner's interests."

But contrary to the Secretary's characterization, the Ninth Circuit found state action in <u>Goichman</u> *not* because of any concern with recovering fines, but instead because the impound company had "act[ed] at the behest of a police officer and pursuant to a statutory scheme designed solely to accomplish the state's purpose of *enforcing its traffic laws*." <u>Goichman</u>, 682 F.2d at 1322 (emphasis added). Indeed, the decision does not contain the words "fines" and its only discussion of a "security" interest was in the context of upholding the requirement that owners pay initial towing charges up-front, subject to reimbursement at hearings that the law entitled vehicle owners to receive. <u>See</u> <u>id.</u> at 1324. This distinction is fatal to the Secretary's argument, for as the Secretary otherwise admits (p. 10) the overall scheme of firearms seizure serves to mitigate against "the risk presented by unlicensed or violently abusive persons continuing to possess firearms" – an interest that is assuredly one of the government, not the deprived individual.

Rather than addressing the actual merits of the nexus/joint action test or its application to the facts of this case, Defendants instead attempt to simply confuse and mischaracterize the law. For example, Village Vault argues in its supplemental brief (p. 2) that it cannot be a state actor due to "[t]he mere fact that [it] is subject to state regulation" and its "mere reliance on a statute." This may be true – but it is irrelevant, as Plaintiffs do not seek to hold Village Vault liable on

-5-

just this basis.  The Secretary likewise tries to confuse the issues by ignoring the nexus/joint action test and instead asserting (p. 15) that private companies like Village Vault can *only* be liable as state actors if they perform traditional state functions.  This is not the case, of course, for as Plaintiffs showed in their moving papers, there are two other established bases for attributing the actions of private companies to the government, one of which is the nexus/joint action test that applies here.  See Plaintiffs' Br. p. 9; Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 5 (1st Cir. 2005).  Indeed, later in its brief (p. 17) the Secretary concedes this point.

     Village Vault continues its approach of trying to ignore the pertinent facts when it contends (pp. 2-3) that Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40 (1999), San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee, 483 U.S. 522 (1987), and Rendell-Baker v. Kohn, 457 U.S. 830 (1982), support the conclusion that it is not a state actor.  None of these cases concerned the situation presented here – a private company that is performing services at the request of the police, and further, that is doing so in consequence of an exercise of coercive power by the police.  Rather, American Manufacturers concerned a worker's compensation insurer that was subject to regulation and that utilized a state-run "utilization review" procedure to determine questionable claims.  See Am. Mfrs., 526 U.S. at 50.  Extensive regulation did not make the insurance company a state actor, but more significantly, it would have been a state actor if "the State 'ha[d] exercised coercive power or ha[d] provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'"  Id. at 52 (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)).  The same is true of San Francisco Arts, where the Court ruled that "[t]he fact that Congress granted [the U.S. Olympic Committee] a corporate charter does not render the USOC a Government agent."  San

Francisco Arts, 483 U.S. at 543. Again, the Court observed that private companies *are* liable as state actors if the government "has exercised coercive power or has provided . . . significant encouragement." Id. at 546 (quoting Blum, 457 U.S. at 1004). And ditto for Rendell-Baker, where the Court held that a state's funding and regulation of a private school did not make the school a state actor for purposes of a former teacher's wrongful termination claim. See Rendell-Baker, 457 U.S. at 840-43.

The Secretary's citations (pp. 15-16) to Flagg Bros., Inc. v. Brooks, 436 U.S. 149 (1978), Grapentine v. Pawtucket Credit Union, 755 F.3d 29 (1st Cir. 2014), and Penney v. First Nat'l Bank of Boston, 433 N.E.2d 901 (Mass. 1982), are similarly inapposite. These cases stand for the irrelevant proposition that a private company that utilizes lien and forfeiture procedures available under state law does not, for that reason alone, become a state actor. See Flagg Bros., 436 U.S. at 164; Grapentine, 755 F.3d at 34; Penney, 433 N.E.2d at 719. None of these decisions concerned the situation presented here: a private company that holds property at the request of police officers, whose own custody of the property comes in consequence of seizing that property from its owners.[2]

Nor does Mead v. Independence Ass'n, 684 F.3d 226 (1st Cir. 2012), which the Secretary cites at page 16, refute Village Vault's liability as a state actor. The question there was whether a private company became a state actor when it fired an employee after the Department of Health and Human Services had directed the employer to remove the employee from her position. The employer was not a state actor because DHHS had not ordered her *termination*, but instead just that she not continue in her current position. See id. at 232. Estades-Negroni v. CPC Hosp. San

---

[2] Flagg Bros. concerned the sale of property that had been stored following an eviction, but significantly, the property owner had made her own contract with the warehouse, rather than having the terms "forced" upon her by the unilateral actions of the police. See Flagg Bros., 436 U.S. at 153 (Plaintiff "was informed of the cost of moving and storage, and she instructed the workmen to proceed").

-7-

Juan Capestrano, 412 F.3d 1 (1st Cir. 2005), is also readily distinguished because the question there was whether a hospital became a state actor when the plaintiff's private psychiatrist and son (not the hospital) obtained an order of involuntary commitment. Id. at 3. Finally, Brentwood Academy v. Tennesee Secondary School Athletic Ass'n, 531 U.S. 288 (2001), also concerned different facts. There, a private inter-school athletic association staffed largely by school board officials was a state actor because of the "persuasive entwinement" of the school officials in the organization's structure. Id. at 296-97. None of these decisions address involuntary seizure by the police followed by involuntary storage at the hands of a private company arranged by the police.

The Secretary claims (p. 16) that this case "looks nothing like those cases in which state action has been found in a private entity's conduct" – which is an incredible assertion, given that the Secretary has simply *ignored* the numerous analogous cases that Plaintiffs cited in their moving papers in favor of cases that concern different circumstances. Suffice it to say that this case looks quite a bit like Smith v. Insley's Inc., 499 F.3d 875, 880 (8th Cir. 2007); Coleman v. Turpen, 697 F.2d 1341, 1345 (10th Cir. 1982); Goichman v. Rhueban Motors, Inc., 682 F.2d 1320, 1322 (9th Cir. 1982); Stypmann v. City and County of San Francisco, 557 F.2d 1338, 1341-42 (9th Cir. 1977); Assocs. Comm'l Corp. v. Wood, 22 F. Supp. 2d 502, 506 n.6 (D. Md. 1998); Weinrauch v. Park City, 635 F. Supp. 91, 94 (D. Utah 1988); Addante v. Village of Elmwood Park, 541 F. Supp. 497, 499 (N.D. Ill. 1982); Wright v. City of Reno, 533 F. Supp. 58, 63 (D. Nev. 1981); Mays v. Scranton City Police Dep't, 503 F. Supp. 1255, 1263-64 (M.D. Penn. 1980); Hann v. Carson, 462 F. Supp. 854, 868-69 (M.D. Fla. 1978); and Tedeschi v. Blackwood, 410 F. Supp. 34, 41-42 (D. Conn. 1976) (three-judge court), wherein private companies storing property at the request of the police officers were properly found to be state actors.

## II) PLAINTIFFS HAD PROPERTY INTERESTS IN THEIR CHATTELS AND MONEY

Plaintiffs showed in their moving papers that Village Vault deprived them of two additional property interests *after* the police departments had initially seized their guns. First, Village Vault deprived the Plaintiffs of money by demanding payment of its unilaterally imposed storage fees and imposing a lien on the property to secure the payment of this claim. See Plaintiffs' Br. pp. 12-13. Second, Village Vault deprived Plaintiffs of title to the property itself by taking and selling the property when Plaintiffs could not pay its claimed fees. See id. at 13-14. Plaintiffs cited no less than nine judicial decisions that, in the analogous context of automobiles, showed that the imposition of fees and liens and the taking of title itself are additional and successive deprivations that go beyond the initial taking of custody (possession) – and require the basic Due Process Clause protections of notice and an opportunity to be heard. See id. at 12-14.[3]

Tellingly, neither Defendant responds to even one of these nine cases.

The Secretary instead responds by claiming (pp. 14-15) that because § 129D provides police departments with the option of transferring guns to Village Vault, the Plaintiffs therefore did not hold any "property" interest within the scope of the Due Process Clause, reasoning that this grant of discretion resulted in no "legitimate claim of entitlement." This circular argument is nothing but a mischaracterization of the nature of the Plaintiffs' interests.

---

[3] Propert v. District of Columbia, 948 F.2d 1327, 1331 (D.C. Cir. 1991) (destruction of property); Coleman v. Turpen, 697 F.2d 1341, 1344-45 (10th Cir. 1982) (auction of property); Assocs. Comm'l Corp. v. Wood, 22 F. Supp. 2d 502, 505 (D. Md. 1998) (sale of property to third party); Wright v. City of Reno, 533 F. Supp. 58, 64 (D. Nev. 1981) (storage fees and lien); Mays v. Scranton City Police Dep't, 503 F. Supp. 1255, 1262 (M.D. Penn. 1980) (storage fees and lien); Remm v. Landrieu, 418 F. Supp. 542, 548 (E.D. La. 1976) (storage fees); Craig v. Carson, 449 F. Supp. 385, 392 (M.D. Fla. 1978) (storage fees); Sandia v. Rivera, 46 P.3d 108, 110, 132 N.M. 201, 203 (2002) (storage fees); see also Belcher v. Norton, 497 F.3d 742, 750 (7th Cir. 2007) (lien for towing and storage services "d[oes] not eliminate" underlying property interest).

As the Supreme Court explained in Board of Regents v. Roth, 408 U.S. 564 (1972), one of the two cases the Secretary cites to support its argument (p. 14), the modern Supreme Court has expanded "the property interests protected by procedural due process [to] extend *well beyond* actual ownership of real estate, chattels, or money," id. at 571-72 (emphasis added), and to also include governmental benefits for which a person has "a legitimate claim of entitlement," id. at 577. This "new property" includes things like welfare benefits and the continuation of tenured or contracted employment. See id. at 576-77. Indeed, Roth concerned the rights of a non-tenured professor, see id. at 566, and the other case that the Secretary cites to support its argument concerned a former employee's rights under a collective bargaining agreement. See id. at 566; Clukey v. Camden, 717 F.3d 52, 56 (1st Cir. 2013).

These cases – addressing whether non-property entitlements become tantamount to "property" for purposes of the Due Process Clause – are irrelevant here because the Plaintiffs lost *money* and *chattel property*, interests that have always been within the Due Process Clause's protection, rather than the benefits and privileges that fall within the scope of "new property."

The Secretary's claim (pp. 9, 13) that what is at issue here is whether Plaintiffs have a "legitimate property interest" in "the indefinite, cost-free maintenance of seized firearms in the hands of the police" is a misstatement of the issue. If Plaintiffs asserted some right to "indefinite, cost-free maintenance . . . . in the hands of the police," then they would have sued the police for violating this alleged entitlement.

Rather, the interest at stake is the ownership of property and money. And it is beyond dispute that each of the Plaintiffs held both possession and title to their property up until the police took custody of it. While this action deprived Plaintiffs of the right to possess their property at the immediate time, it did not divest them of *title* to their property, nor of their right

-10-

to *reclaim possession* in the future – rights that the Plaintiffs continued to hold until Village Vault took them away. M.G.L. c. 140, § 129D serves only to clarify this by stating that police must hold seized guns and return or transfer them to or at the direction of their owners for a period of one year.

In this light, it is clear that the Secretary's claim that § 129D is the *source* of Plaintiffs' property rights is nothing but circular reasoning: the Secretary is contending that a state law that allows the deprivation of property rights without notice or an opportunity to be heard shows that the rights do not exist in the first place. In reality, however, when state law allows state actors to take property interests without providing notice and an opportunity for a hearing, there is a violation of the Due Process Clause.

The Secretary's appeal (pp. 8-9, 12) to the availability of a hearing for the suspension or revocation of a firearms license is equally misplaced. (Indeed, at the first hearing held on October 4, 2012, the Court immediately recognized – and directly told both Defendants – that the availability of a license suspension hearing was irrelevant to the property deprivations at issue in this case.) The hearing provided for a license suspension (which would only have been available to Plaintiff James Jarvis, since the other Plaintiffs were never suspended or revoked) addresses only the question of whether "there was no reasonable ground for denying, suspending or revoking [the] license," M.G.L. c. 140, § 131(f) – *not* (for example) whether the individual has title to the guns, whether particular guns should have been seized as a result of the suspension, or whether fees that might be imposed in the future are either due or reasonable. The Secretary's assertion that "the plaintiffs were provided the opportunity for a judicial hearing, or an actual hearing, *regarding the propriety of the seizure of the guns*" (p. 8, emphasis assed) is unfounded and wrong. Tellingly, the Secretary does not cite any statute or regulation that would have made

such a hearing available – which is an understandable omission, given that no such statute or regulation exists.

And relatedly, the Secretary's reliance (p. 10) on Hightower v. Boston, 693 F.3d 61 (1st Cir. 2012), and Spinelli v. City of New York, 579 F.3d 160 (2d Cir. 2009), is similarly misplaced. These decisions upheld the authority of police to revoke gun licenses and *initially* seize guns without providing predeprivation protections on the rationale that the lack of "a predeprivation hearing is justified by concerns as to public health and safety." See Hightower, 693 F.3d at 85; see also Spinelli, 579 F.3d at 170-71. Of course, here the police had *already* seized the Plaintiffs' guns, so there was no longer any exigency or impracticality that prevented providing pre-deprivation remedies. And it is well established that (as the First Circuit observed in Hightower) procedural protections must be provided *before*, not after, deprivations take place except "where a State must act quickly, or where it would be impractical to provide predeprivation process." Hightower, 693 F.3d at 84 (quoting Gilbert v. Homar, 520 U.S. 924, 930 (1997)).

### III) THE SECRETARY'S APPEAL TO "CONSTRUCTIVE NOTICE" IS BASELESS

Plaintiffs' moving papers showed that Village Vault imposed fees and liens, which it then used to take the Plaintiffs' property, without any prior notice to the Plaintiffs, and also without any opportunity for the Plaintiffs to be heard. See Plaintiffs' Br. pp. 14-15.

The Secretary responds by asserting (pp. 9, 17) that people who own guns are "presumed to know" and "expected to know" all laws that pertain to firearms and are accordingly "deemed to have consented" to these deprivations. The Secretary goes so far as to claim (p. 17) that there is not just a presumption of notice, but for that matter, a "*heightened* presumption" of notice – whatever that might mean. This argument contravenes established principles that govern when constructive notice is adequate – a circumstance that is manifestly not present here.

The well established rule is that "prior to an action which will affect an interest in life, liberty, or property protected by the Due Process Clause of the Fourteenth Amendment, a State must provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 795 (1983) (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)). *Constructive* notice (*e.g.* the publication of information by the government), rather than *actual* notice (provided specifically to the concerned individual) is acceptable only when the concerned individual's identity is not "reasonably ascertainable." See id. at 799-800. For example, in Mennonite a tax foreclosure was void as to a mortgagee whose interest appeared in the record, but who had not been provided actual notice of the pending foreclosure proceeding. See id. Village Vault obviously knew the Plaintiffs' identities because it sent them bills after it had taken custody of their property and begun imposing charges – so, other issues aside, constructive notice has no place here.

The authorities the Secretary relies upon to support its constructive notice claim (p. 17) are wholly inapposite. United States v. DeBartolo, 482 F.2d 312 (1st Cir. 1973), was a criminal prosecution for transferring a sawed-off shotgun. The court's ruling – that a criminal defendant's claimed ignorance of the unlawful nature of the firearm was not a defense from a criminal prosecution, see id. at 316-17 – is apples and oranges with the Due Process Clause's requirement of notice calculated to apprise. And ICG Petroleum, Inc. v. U.S. Dep't of Energy, 883 F.2d 80 (Temp. Emg'y Ct. App. 1989), is equally impertinent because it did not concern the due process requirements that attend to governmental actions that single out particular individuals. Instead, the case concerned two companies that had missed a statute of limitation for seeking judicial review of a regulatory decision of the Department of Energy. See id. at 81.

These companies made the "due process" argument, rejected by the court, that Congress should have provided more than 90 days before the law became effective.  See id. at 82.[4]

Indeed, the ramifications of the Secretary's constructive-notice rationale would effectively overturn a long line of Supreme Court precedents establishing the requirements of notice and an opportunity to be heard.  For example, the rationale would overturn virtually all of the impound and storage cases that Plaintiffs have cited because the pertinent laws and regulations in those cases authorized the deprivations that were found to be constitutional.  But no one could reasonably dispute that extensive regulations apply to motor vehicles, that owners and operators are aware of things like the need to obtain driving licenses and register vehicles, and that the misuse of automobiles presents substantial public safety concerns – the very same considerations that the Secretary points at (pp. 8-9, 17) to support its constructive notice argument.

## IV) DEFENDANTS' REMAINING ARGUMENTS ARE MERITLESS

Village Vault's argument (page 3 of its first brief) that Hightower establishes that it is not liable for violating the Due Process Clause unless it "act[ed] 'arbitrarily and capriciously'" is absolutely meritless.  This state-law standard applies when an individual challenges the suspension or revocation of his or her gun license under M.G.L. c. 140, § 131(f) and is irrelevant to the deprivation of property interests that this case concerns.

Furthermore, Secretary Cabral's footnote claim (p. 17 n.7) that the availability of a tort action for damages is an adequate remedy is also dead wrong.  Under the Parratt-Hudson doctrine, tort actions are adequate remedies for due process deprivations only when those deprivations occur as the result of *unauthorized* conduct by state actors that cannot be predicted

---

[4] The Secretary's characterization of this case (p. 17) as standing for the proposition that "companies working in heavily regulated industry are reasonably expected to know regulatory obligations and the existence of regulations constitute[s] sufficient notice to satisfy due process" is manifestly wrong.

-14-

in advance and that accordingly cannot be the subject of pre-deprivation procedural protections. See San Gerónimo Caribe Project, Inc. v. Acevedo-Vilá, 650 F.3d 826, 835-36 (1st Cir. 2011). Village Vault's conduct was not unauthorized, but was instead pursuant to § 129D – a fact that Village Vault itself emphasizes – and the Parratt-Hudson therefore does not apply. See Chmielinski v. Com. of Mass. Ofc. of the Comm'r of Probation, 513 F.3d 309, 315 (1st Cir. 2008).

Finally, the Secretary's claim (p. 19) that the Due Process Clause is not implicated because "plaintiffs seek notice in the nature of a warning simply to allow them to seek alternatives to, and avoid the consequence, of the transfer" is meritless, and neither Goldberg v. Kelly, 397 U.S. 254 (1970), nor Matthews v. Eldridge, 424 U.S. 319 (1976), support this claim. On the contrary, the Due Process Clause serves "not only to ensure abstract fair play," but also "to protect [one's] use and possession of property from arbitrary encroachment – to minimize substantively unfair or mistaken deprivations of property." United States v. James Daniel Good Real Prop., 510 U.S. 43, 53 (1993) (quotation omitted). For example, a judgment rendered without notice is invalid, regardless of how a court thinks the dispute might have been adjudicated had the defendant been properly served. See, e.g. Griffin v. Griffin, 327 U.S. 220, 233 (1946). Plaintiffs were entitled to notice not only so that they could decide whether to request hearings, but also so that they could act to prevent the deprivation from taking place in the first place.

## CONCLUSION

Defendants have failed to rebut Plaintiffs' evidentiary and legal showing, and Plaintiffs are entitled to partial summary judgment holding Village Vault liable for taking their property without providing procedural due process protections.

Dated: September 8, 2014

>Respectfully submitted,
>
>THE PLAINTIFFS,
>
>By their attorneys,

| | |
|---|---|
| Patrick M. Groulx, Esq. | David D. Jensen, Esq. |
| BBO No. 673394 | Admitted *Pro Hac Vice* |
| Donahue, Grolman & Earle | DAVID JENSEN PLLC |
| 321 Columbus Avenue | 111 John Street, Suite 420 |
| Boston, Massachusetts 02116 | New York, New York 10038 |
| Tel:  617.859.8966 | Tel:  212.380.6615 |
| Fax:  617.859.8903 | Fax:  917.591.1318 |
| patrick@d-and-g.com | david@djensenpllc.com |

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on 8 September 2014.

 /s/ David D. Jensen
David D. Jensen, Esq.