UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RUSSELL JARVIS; JAMES JARVIS; ROBERT CRAMPTON; and COMMONWEALTH SECOND AMENDMENT, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> VILLAGE GUN SHOP, INC. d/b/a VILLAGE VAULT; and SECRETARY ANDREA CABRAL, in her Official Capacity as Secretary of the Executive Office of Public Safety and Security, <br><br> Defendants. | CIVIL ACTION NO. 1:12-cv-40032 |

### PLAINTIFFS' RESPONSE TO DEFENDANT SECRETARY CABRAL'S COUNTER-STATEMENT OF UNDISPUTED FACTS

Plaintiffs respond to Defendant's counter-statement of material facts (Doc. No. 66, which has been combined with Defendant's response to Plaintiffs' statement of facts) as follows:

1. With respect to Paragraphs 1 through 5, of Plaintiffs' Statement, the Secretary admits these facts are undisputed for present purposes.

   RESPONSE:  N/A.

2. James Jarvis had been issued a Firearms Identification Card ("FID card") in 1980 by the Adams Police Department, and continuously had it in effect, with one exception, until it was suspended in July 2010. (By operation of law, Jarvis's FID card expired on March 23, 2000, and it was not reinstated until October 13, 2004.) [James Jarvis Deposition of March 7, 2014, attached hereto as Attachment A, pp. 10-11; Ex. 1, 4, 5 to James Jarvis Deposition, attached hereto as Attachments B, C, and D.]

   RESPONSE:  Not disputed.

3. In addition, Jarvis had a License to Carry Firearms issued on November 28, 2007 by the Cheshire Police Department. [Attachment A, pp. 23; Attachment B.]

   RESPONSE:  Not disputed.

4. With respect to Paragraphs 6 through 15, of Plaintiffs' Statement, the Secretary admits these facts are undisputed for present purposes, with one exception. In Paragraph 6, plaintiffs allege that "[a]t all material times, Plaintiff Russell Jarvis has held a valid LTC issued pursuant to M. G. L. c. 140, § 131." In fact, Russell Jarvis's license to carry firearms expired on December 8, 2006, and he did not get a new license issued until July 28, 2010. Russell Jarvis first got licensed to have firearms in 1955. [Russell Jarvis deposition of May 21, 2014, attached hereto as Attachment E; pp. 6-7, 12-13; Ex. 1 to Russell Jarvis Deposition, attached hereto as Attachment F; Ex. 3 to Russell Jarvis Deposition attached hereto as Attachment G.]

   RESPONSE: Not disputed.

5. In approximately 2004 or 2005, James Jarvis built a gun cabinet in his house in Cheshire, Massachusetts. [Attachment A, pp. 17-19, 45-46; Attachment E, pp. 16-20.] James Jarvis, his father Russell Jarvis, and his son James A. Jarvis, II all stored their guns in this cabinet and each of them had free access and permission to take and use any of the guns, sharing them all. [Attachment A, pp. 17-20; Attachment E, pp. 18-20, 29, 54-55.

   RESPONSE: Not disputed.

6. In the early-morning of July 9, 2010 , James Jarvis was arrested by the Massachusetts State Police for assault and battery on his wife, Lisa Jarvis. As a result of this the North Adams District Court, at 1:00 a.m. on July 9, 2010, issued an emergency restraining order against James Jarvis ordering him not to abuse his wife, not to contact her, to leave and stay away from their residence. As a result of this order, that same morning, the State Police seized the over 30 firearms, ammunition and other weapons that James Jarvis possessed in his residence. [Reports of Massachusetts State Police attached hereto as Attachment H; Attachment A, pp. 47, 54-56; Certified copy of North Adams District Court File, No. 201028RO0163, attached hereto as Attachment I.]

   RESPONSE: Not disputed, with the qualification that Mr. Jarvis was arrested on a *charge* of assault and battery that his former wife made immediately after learning that he was leaving her, and that this charge was ultimately dismissed in its entirety (*i.e.* without any plea agreement, conditional discharge, admission of sufficient facts, etc.). See J. Jarvis Dep. (Exhibit 1) at pp. 56:18-57:16.

7. With respect to Paragraphs 16 through 19 of Plaintiffs' Statement, the Secretary admits these facts are undisputed for present purposes.

   RESPONSE: N/A.

8. At 9:45 a.m. on July 9, 2010, James Jarvis appeared at a hearing in North Adams District Court, at which his wife appeared as well, and a judge reviewed the restraining order that had been issued earlier that morning. The order was then extended to August 9, 2010 and a hearing was scheduled for that date. [Attachment I.]

   RESPONSE: Not disputed.

9. On August 9, 2010, another hearing was held before a judge of the North Adams District Court at which both Jarvis and his wife appeared, both represented by counsel. After this hearing, the restraining order against Jarvis was continued in effect until August 2, 2011. [Attachment I.]

   RESPONSE: Not disputed.

10. Another hearing was held on November 18, 2010, both Jarvis and his wife appearing, the order was modified and continued again to August 2, 2011. On August 2, 2011, the restraining order was vacated. [Attachment I.]

    RESPONSE: Not disputed.

11. With respect to Paragraphs 20 through 36 of Plaintiffs' Statement, the Secretary is without sufficient information or documentation to either admit or dispute Plaintiffs' alleged undisputed facts, specifically with regard to which firearm or other item seized by the State Police belonged to, or was owned by, which Jarvis family member, as no documentation of ownership has been presented for the vast majority of the items.

    RESPONSE: Defendant's claimed lack of knowledge is insufficient to rebut competent evidence submitted on a summary judgment motion. See Fed. R. Civ. P. 56(c)(1), (d); see also Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

12. On July 9, 2010, after he left the residence he had shared with his wife, James Jarvis moved into his father's and mother's house at 6 Davis Street in Adams, Massachusetts. He lived there for two years. [Attachment A, pp. 57-58; Attachment E, pp. 36-37.] During that time frame, as long as the restraining order against James Jarvis was in effect, the State Police were not able to return the guns to Russell Jarvis, with whom James was living. [Attachment E, pp. 40-41.] Indeed, at the time Russell Jarvis spoke to the State Police, he was not then licensed to carry firearms, and the police were not able to give him the guns lawfully. [Attachment E, pp. 12-13, 41-44; Attachment F; Attachment G.]

    RESPONSE: Denied, but admitted that on July 9, 2010 Mr. Jarvis left the residence he had shared with his wife, moved into his father's and mother's house at 6 Davis Street in Adams, Massachusetts, and then lived there for two years. Further admitted that when Russell Jarvis spoke to the State Police in July 2010, his LTC had expired, and the police were not able to give him the guns lawfully at that time.

The restraining order did not prevent State Police from turning the guns over to Russell so long as Russell did not allow James to exercise the elements of possession (*i.e.* custody and control). By Defendant's faulty reasoning, any person with (for example) a child in their home would not be able to possess a firearm, regardless of whether the child had custody or control of the firearm. But see M.G.L. c. 140, § 131L (requiring gun owners to secure firearms to prevent access by anyone who is not "a lawfully authorized user," and specifically addressing children).

The evidence that Defendant relies upon to support this assertion is pages 40-41 of Russell Jarvis's deposition. While Mr. Jarvis testified that if the guns were returned "[t]hey weren't going to be at my house," what he said more pertinently is: "It [the fact that James was living with him] doesn't matter. I could have stored those guns anywhere." Russell Jarvis Dep. at pp. 40:18-21, 41:10, attached as Exhibit E to Defendant's opposition (Doc. No. 66-5).

Moreover, other evidence produced in this case directly refutes Defendant Cabral's claim that Village Vault could not turn over the guns to Russell. Defendant Village Vault's own records reflect that Trooper Canata of the Massachusetts State Police expressly advised Village Vault that it could transfer the guns to Russell on August 23, 2010, and that the issue preventing the transfer wasn't Massachusetts law, but was instead the claimed fees of over $1,300 that Village Vault demanded for less than two weeks of storage:

> Mon 23 Aug -10 – 9:40 AM – P called Tpr Canata explained Mr J wants to transfer guns to his father same residence[.] Tpr Canata will call back
>
> Mon 23 Aug -10  3   PM   Tpr Canata OK to transfer guns to Mr. Jarvis
>
> 8-23-10   Jz called Mr. Jarvis to set apt. Fees $1,307- with transfers. Mr. Jarvis said we are crazy + he is calling his lawyer. He's not paying $1000- for his guns.

Initial Disclosures of Village Vault, attached as Exhibit 2 hereto.

13. Russell Jarvis did not tell the police that he wanted to transfer his guns to anyone in particular. Nor did James or Russell Jarvis notify the police in writing to transfer the guns to anyone in particular. [Attachment A, pp. 58-60; Attachment E, pp. 40-44.]

    RESPONSE: Not disputed, but with the important qualification that State Police had told the Jarvises that State Police would continue to hold their guns, so there was no pressing need to have them transferred to one of the specific third-parties who could have received them. See Plaintiffs' Statement of Undisputed Facts (Doc. No. 34) ¶¶ 34-36, 51.

14. On July 21, 2010, the Adams Police Chief sent James Jarvis a letter suspending Jarvis's Firearms Identification Card, under G. L. c. 140, § 129B. This letter informed Jarvis that his firearms were required to be surrendered, along with his Firearms Identification Card, to the licensing authority where he resided, "in

accordance with M.G. L. c. 140, § 129D." [Attachment A, pp. 76-79; Ex. 7 to Deposition of James Jarvis, attached hereto as Attachment J.] James Jarvis did not look at the statute or ask his lawyer to. [Attachment A, pp. 76-78.]

RESPONSE: Not disputed.

15. Both Russell Jarvis and James Jarvis were aware of the laws governing gun licensing and possession and safety, and knew it was important to know the laws. [Attachment A, pp. 11-13, 15-17, 20-22, 25-26; Attachment E, pp. 7-8, 61-62.]

    RESPONSE: Denied, but admitted that both Russell Jarvis and James Jarvis testified that they were aware of some of the laws governing gun licensing and possession and safety. James Jarvis specifically testified: "I don't believe I was aware of all the laws. I was aware of all the general laws[.]" J. Jarvis Dep. at pp. 25:15-26:2; see also id. p. 20:14-18 ("I know all the general rules[.]"). In his deposition, Russell Jarvis agreed with a question asking whether he was "aware . . . that there were laws regarding possession/use of guns that you had to comply with," but the only specifics discussed were the duration of licenses and the general fact that laws had changed over time. See R. Jarvis Dep. at pp. 8:2-8, 61:7-21. All referenced pages are included as exhibits to Defendant's statement.

16. The Secretary admits that the facts in Paragraphs 37 through 46 of the Plaintiffs' Statement are undisputed for present purposes

    RESPONSE: N/A.

17. Plaintiff Robert Crampton was issued a Firearms Identification Card in the late 1960's. [Robert Crampton, Responses to Interrogatories, attached hereto as Attachment K.]

    RESPONSE: Not disputed.

18. After Crampton gave his firearms to the Tewksbury Police on June 2, 2010, he was told that he needed to obtain a current license. [Attachment K.]

    RESPONSE: Not disputed.

19. Robert Crampton never requested the Tewksbury Police to transfer his guns and ammunition to any specific individual. [Attachment K.]

    RESPONSE: Not disputed, but with the important qualification that Mr. Crampton would have transferred his guns to a third-party if he had known in advance that Village Vault was going to take the guns and charge him fees. See Plaintiffs' Statement of Undisputed Facts (Doc. No. 34) ¶¶ 55.

20. Crampton did not, after June 2, 2010, apply for a new Firearms Identification Card or a License to Carry Firearms, and none was ever issued. [Attachment K.]

    RESPONSE:  Not disputed.

21. The Secretary admits that the facts in the "Affidavit of Defendant, Village Gun Shop, Inc. d/b/a Village Vault in Opposition to Plaintiffs' Motion for Partial Summary Judgment Against Defendant, Village Gun Shop, Inc. d/b/a Village Vault by Peter G. Dowd" are undisputed for present purposes.

    RESPONSE:  N/A.

Dated: September 8, 2014

> Respectfully submitted,
> THE PLAINTIFFS,
> By their attorneys,

| | |
|---|---|
| Patrick M. Groulx, Esq. | David D. Jensen, Esq. |
| BBO No. 673394 | Admitted *Pro Hac Vice* |
| Donahue, Grolman & Earle | DAVID JENSEN PLLC |
| 321 Columbus Avenue | 111 John Street, Suite 420 |
| Boston, Massachusetts 02116 | New York, New York 10038 |
| Tel: 617.859.8966 | Tel: 212.380.6615 |
| Fax: 617.859.8903 | Fax: 917.591.1318 |
| patrick@d-and-g.com | david@djensenpllc.com |

### CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on 8 September 2014.

    /s/ David D. Jensen
David D. Jensen, Esq.